Joe BORDEN, Plaintiff,

v.

Edwin MEESE, Alan Nelson, and Louis M. Richard, Defendants.

Civ. A. No. C85–2705A.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 21, 1985.

Motion for Reconsideration on
June 25, 1985.

Richard Prinz, Houston, Tex., Jay Solomon, Atlanta, Ga., for plaintiff.

Sharon Douglas Stokes, Nina Hickson, Asst. U.S. Attys., Atlanta, Ga., for defendants.

## ORDER

SHOOB, District Judge.

Presently before the Court is plaintiff's motion for a preliminary injunction directing plaintiff's immediate release from the Atlanta Federal Penitentiary. In deciding this motion, the Court addresses issues that are peculiar to the facts of this case and that are entirely separate from issues previously addressed by this Court concerning the detention of Mariel Cubans.[1] The distinguishing feature of this case is that plaintiff has been granted political asylum in the United States by an immigration judge.

## BACKGROUND

Plaintiff first entered the United States as a child, became a permanent resident, and attended public school in Florida in the late 1950's. Both his parents and two of his sisters presently are naturalized citizens of the United States. Plaintiff abandoned his permanent residency in 1961 to return to Cuba. According to the transcript of his exclusion hearing before the immigration judge, plaintiff participated in substantial anti-communist, anti-Castro activities in Cuba, for which he was shot on one occasion and was arrested, beaten, and imprisoned on several other occasions. Plaintiff returned to the United States in the 1980 Mariel boatlift and was paroled. In August, 1982, plaintiff was convicted of possession of cocaine. When he completed his sentence in June, 1984, he was sent to the Atlanta Penitentiary where he has since remained.

At an exclusion hearing on October 29, 1984, the immigration judge found that plaintiff was excludable under 8 U.S.C. § 1182(a)(20) (lack of proper entry documents) and (a)(23) (conviction relating to drugs). The immigration judge also heard extensive testimony concerning plaintiff's anti-Castro activities and his resulting harsh treatment by Cuban authorities. Further, the immigration judge questioned plaintiff at length about the circumstances of his cocaine conviction. At the conclusion of the hearing, the immigration judge rendered his "Oral Decision" granting plaintiff asylum, which concluded as follows:

I have observed the applicant's demeanor during his testimony during the hearing and judge him to be a credible witness.

---

1. Plaintiff also has raised certain issues that have been raised by other Mariel Cubans, but this Court does not address those issues in this order.

Based upon his testimony that he was incarcerated in Cuba for espionage and his continued acts of espionage through the sixties and seventies and his distribution of anti-government literature, I would find that he has established a well-founded fear of persecution should he be returned to Cuba. I would therefore grant his application for political asylum.

Original (Transcribed) "Oral Decision of the Immigration Judge" at 3–4.

Also at the conclusion of this October 29, 1984 hearing, counsel for the Immigration and Naturalization Service (INS) apparently[2] filed a notice of appeal of the grant of asylum and, the government contends, orally notified plaintiff of the appeal to the Board of Immigration Appeals. In a letter dated November 30, 1984, INS counsel advised plaintiff's counsel of the appeal.

Several months passed, and plaintiff remained in detention under the "lock-down" conditions[3] in effect at the penitentiary. In a letter dated April 18, 1985, the District Director of INS denied plaintiff's requests for release pending appeal of the grant of asylum because he found that plaintiff "constitutes a danger to the community of the United States."

On April 25, 1985, plaintiff filed this action alleging, among other things, that his continued detention constitutes an abuse of discretion because the government has acted contrary to its own regulations and procedures in handling the appeal. Plaintiff is seeking injunctive relief directing his release or, alternatively, an order directing the government to process the appeal. On May 6, 1985, this Court held a hearing to address plaintiff's request for a temporary restraining order (TRO) directing his immediate release. Counsel for the government suggested that the appeal had not proceeded because the immigration judge's decision had not yet been signed. The Court was not convinced at that time that plaintiff was entitled to immediate release and, consequently, in its order of May 10, 1985, the Court denied the motion for a TRO.

Still, the Court was concerned that the government may not have appealed or may have abandoned its appeal of the grant of asylum. Thus, in that May 10, 1985 order, the Court directed the parties to appear at a June 6 injunction hearing and to brief the following issue: "whether, assuming that the grant of asylum was not appealed or that the appeal has been abandoned, the government may lawfully continue to detain plaintiff." Both plaintiff and the government have responded that no authority exists to justify plaintiff's detention if an appeal of the grant of the asylum is not pending. Both parties also have agreed that if an appeal is pending, the effect of the grant of asylum is stayed. See 8 U.S.C. § 1226(b); 8 C.F.R. §§ 3.6(a), 236.6.

On May 14, 1985, after the Court had scheduled the June 6 preliminary injunction hearing, the immigration judge signed a document that was styled "Oral Decision of the Immigration Judge." This "Oral Decision," however, differs from the original "Oral Decision" transcribed from the October 29, 1984 exclusion hearing. Although both "Oral Decisions" purport to grant plaintiff asylum, the "Oral Decision" signed May 14, 1985 also finds that plaintiff is not entitled to withholding of deportation because he "has been convicted of a particularly serious crime and poses a danger to the community." This finding does not appear anywhere in the original, tran-

---

**2.** It is not clear whether the notice of appeal was timely filed because the copies presented to the Court were not stamped "filed" with any date and, according to the complaint, neither plaintiff nor plaintiff's counsel was served with stamped copy. Based on the representations of counsel for the government, however, for purposes of this motion the Court assumes that the notice of appeal was filed the same day as the grant of asylum, October 29, 1984.

**3.** Based on past conferences with counsel for the government in related cases, the Court understands that under the "lock-down" procedures, detainees at the penitentiary receive at most one shower and one exercise period each week and are subject to other restrictions on activities ordinarily a part of prison life. The prospect of further detention in such an environment has added urgency to plaintiff's request for injunctive relief.

scribed "Oral Decision" or in the transcript of the October 29, 1984 exclusion hearing.

## JURISDICTION

 As the Eleventh Circuit Court of Appeals has observed, the executive branch has broad discretion over immigration affairs. *Jean v. Nelson,* 727 F.2d 957, 976 (11th Cir.1984). Nonetheless, even discretionary decisions of executive officials are subject to judicial review, although that review is "extremely limited." *Id.*; *see also Fernandez-Roque v. Smith,* 734 F.2d 576, 583 (11th Cir.1984). In *Jean* and *Fernandez-Roque,* the Eleventh Circuit held that discretionary decisions concerning the parole of aliens were reviewable for abuse of discretion.[4] The issues presently being considered by this Court do not concern a *discretionary* grant of parole under 8 U.S.C. § 1182(d)(5)(A), but rather the release *vel non* of an alien who has been granted political asylum and whose release, the parties have agreed, is *mandatory* unless an appeal of his grant of asylum is pending. Thus, the Court concludes that it has jurisdiction to review the government's actions in this case for abuse of discretion, under a standard of review at least as broad as those employed in *Jean* and *Fernandez-Roque.*[5]

## ANALYSIS

To obtain a preliminary injunction, plaintiff must show (1) that there is a substantial likelihood that he will ultimately prevail on the merits; (2) that he will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to plaintiff outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be opposed to the public interest. *United States v. Jefferson County,* 720 F.2d 1511, 1519 (11th Cir.1983).

The Court first addresses plaintiff's likelihood of success on the merits. In arguing that INS has abused its discretion in failing to follow its own regulations and procedures with respect to this appeal, plaintiff cites three regulations that he maintains were violated. The first is 8 C.F.R. § 236.7(c), which provides as follows:

*§ 236.7 Appeals.*

. . . .

(c) *By district director.* The district director may, within five days from date of decision, appeal from an order of the Immigration Judge to admit the applicant, or to grant asylum, or to grant the application for adjustment. The applicant shall be notifed in writing when an appeal is taken by the district director and advised that he will be allowed 5 days from the receipt of notification in which to submit written representations for transmittal to the Board with the record in the case.

The second regulation is 8 C.F.R. § 3.3(c), which provides that appellate briefs must be filed within the "time fixed for appeal," but alternatively appears to allow the immigration judge to set up a briefing schedule. The third regulation allegedly violated by defendants is 8 C.F.R. § 3.5, which provides for forwarding the record to the Board of Immigration Appeals "upon timely receipt of the briefs, or upon expiration

**4.** *Jean* held that "immigration officials clearly have the authority to deny parole to unadmitted aliens if they can advance a 'facially legitimate and bona fide reason' for doing so." 727 F.2d at 977.

**5.** The government has cited one Third Circuit case in attempting to argue that the Court lacks jurisdiction over the issue of abandonment of its appeal. The government maintains that plaintiff has not exhausted his administrative remedies with respect to that issue by first pursuing it before the immigration judge or the Board of

Immigration Appeals. The Court disagrees. That case, *Kephart v. Director, Office of Workers' Compensation Programs,* 701 F.2d 22 (3rd Cir.1983), in no way addressed the exhaustion of administrative remedies. Given that plaintiff has spent the past seven months in the penitentiary awaiting final resolution of his grant of asylum, he could hardly be expected to await the agency's decision on a new issue before coming to federal court. *See Environmental Defense Fund, Inc. v. Hardin,* 428 F.2d 1093, 1098 (D.C.Cir.1970).

of such time allowed for the submission of such briefs."

Plaintiff maintains that INS ignored these three regulations by failing to file its brief within five days of the decision, by failing to notify plaintiff within that time of his right to submit "written representations for transmittal" with the record, and by failing for over six months to transmit the record to the Board of Immigration Appeals.

The government admits that processing of the appeal did not begin until the immigration judge signed the revised "Oral Decision" on May 14, 1984. The government contends, however, that these regulations governing appeal procedures do not apply until the immigration judge issues a "written decision." According to the government, the "practice in this district" is for the immigration judge to send out a formal notification of an appeal, a copy of his written decision, and a briefing schedule. Thus, the government argues that the decision has been properly appealed and the appeal remains in progress.

■ The government has cited no authority to support its assertion that the regulations of 8 C.F.R. governing appeals do not apply until a written decision is issued.[6] On the contrary, the provisions of 8 C.F.R. flatly contradict this assertion. According to 8 C.F.R. § 236.5(a), "The decision of the immigration judge may be *oral or written.*" Relevant portions of that regulation are as follows:

*§ 236.5 Decision of the immigration judge; notice to the applicant.*

(a) *Contents.* The decision of the immigration judge may be oral or written. It shall include a discussion of the evidence and findings as to excludability; the formal enumeration of findings is not required. The decision shall be concluded with the order of the immigration judge.

(b) *Oral decision.* An oral decision shall be stated for the record by the immigration judge at the conclusion of the hearing and in the presence of the applicant. When entitled to appeal from an adverse decision of the immigration judge, the applicant shall be so advised and shall be required to state then and there whether he wishes to appeal. At his request, the applicant shall be furnished with a typewritten transcript of the oral decision of the immigration judge.

Hence, the Court concludes that the regulations published at 8 C.F.R. do govern an appeal from an immigration judge's "Oral Decision" even if no written decision is signed.

■ Plaintiff is correct that an agency's failure to follow its own regulations constitutes an abuse of discretion. *See Payne v. Block,* 714 F.2d 1510, 1517 (11th Cir.1983). This principle also applies to agency actions concerning immigration matters, notwithstanding the narrow standard of judicial review in that field. *Moret v. Karn,* 746 F.2d 989, 992 (3d Cir.1984); *Yee Dai Shek v. Immigration and Naturalization Service,* 541 F.2d 1067, 1069 (4th Cir.1976). Thus, having found that these regulations do apply, the Court must inquire whether the government has acted in accordance with its own regulations.

■ In reviewing the regulations that plaintiff alleges were violated by the government, the Court finds that the timing requirements stated are not as definite as plaintiff appears to argue. Assuming that the government appealed within five days of the October 29, 1984 decision, the Court interprets subsection 236.7(c) of 8 C.F.R. to provide only that the applicant should be notified in writing "when the appeal is taken"; no exact deadline is specified. Although subsection 3.3(c) does require that the appellant file any briefs "within the time fixed for appeal," *i.e.,*

---

6. The government's reference to "practice in this district" is unhelpful because, as government counsel stated during the June 14 hearing, there are presently no written regulations governing "practices in this district." Even if written regulations did exist, it is doubtful that they would supersede the regulations of 8 C.F.R.

within five days of the October 29 decision, that subsection alternatively allows the immigration judge to grant additional time for briefing. Further, section 3.5 provides that the record must be forwarded to the Board of Immigration Appeals no later than the time allowed for submission of briefs, a period which might include any additional time granted by the immigration judge.

Still, in this case the immigration judge took no action to grant additional time until more than six months after his decision. Because of this inaction and because these regulations as a whole contemplate a speedier resolution of an appeal than has occurred, the Court finds that defendants abused their discretion in failing to follow their own regulations in processing the appeal.

This Court, however, is not unaware of the heavy workload borne by immigration judges and officials in the Atlanta area; the Court recognizes that delay often results from an innocent oversight. In light of the deference that courts ordinarily should afford executive officials in immigration matters, in other circumstances the Court would refrain from ordering plaintiff's release and instead simply direct that his appeal be processed promptly.

The circumstances of this "appeal," however, weigh heavily in favor of plaintiff's release. As mentioned above, the "Oral Decision" that the immigration judge signed on May 14, 1985 and that presumably is being forwarded to the Board on appeal differs substantially from the original "Oral Decision" rendered on October 29, 1984. The May 14 version finds that plaintiff is entitled to asylum, and yet adds a finding that plaintiff was convicted of a "particularly serious crime and poses a danger to the community" and, therefore, is not entitled to withholding of deportation. Because this additional finding appears nowhere in the transcript of the October 29 exclusion hearing or in the original, transcribed "Oral Decision," the Court

concludes that the finding was not part of the immigration judge's original decision.

■ This additional finding is most significant because it appears to undermine the rationality of the original grant of asylum. According to the regulations, a person who has been convicted of a "particularly serious crime" and who poses a "danger to the community" is not entitled to asylum. *See* 8 C.F.R. §§ 208.8(f)(1)(iv), 208.15(a). Ironically, the government illustrates the inconsistency of this finding in one portion of its brief:

> [T]he exceptions to 243(h) relief [*i.e.*, withholding of deportation] also apply to applicants for asylum. *See* 8 C.F.R. 208.-8(f)(1)(iii), (iv), (v); *see also Matter of McMullen,* [17 I & N Dec.] at 544 n. 2. Therefore, the IJ's conclusion that the plaintiff was eligible for political asylum, yet ineligible for withholding of deportation based on his conviction for a particularly serious crime is internally inconsistent, and forms at least one of the bases for INS's appeal.

Government's Brief in Opposition to Preliminary Injunction at 8.

This additional finding cannot be said to have been implicit in the immigration judge's October 29 decision. He questioned plaintiff extensively about his anticommunist activities and about his cocaine conviction. The immigration judge reported that plaintiff had testified that he had "recognized the error of his ways," and in the next sentence the judge found plaintiff to be a credible witness. It is inconceivable that, at the time of the October 29 hearing, the immigration judge could have granted plaintiff asylum while holding the view that plaintiff "poses a danger to society."

At the June 14 hearing, counsel for the government took the position that the original, transcribed "Oral Decision" is but a "working document." According to 8 C.F.R. § 236.5, however, the original "Oral Decision" stated for the record by the immigration judge at the conclusion of the hearing *is* the judge's decision.[7] The re-

---

7. That the government filed a "notice of appeal"

immediately after the original "Oral Decision"

vised "Oral Decision," therefore, is in effect a separate document that purports to alter the original decision of October 29.

The regulations, however, provide that certain procedures must be followed before an immigration judge's decision can be altered or revoked. *See, e.g.,* 8 C.F.R. §§ 3.2, 3.8 (procedures governing motions to reopen or to reconsider), 208.15 (procedures governing termination of asylum status). Because the government has failed to follow its own regulations in attempting to modify the original "Oral Decision," the attempted modification was ineffective. This modified "Oral Decision" apparently is the subject of whatever appeal proceedings are now in progress. The Court concludes that the government has abandoned any appeal of the original and valid "Oral Decision."

■ Consequently, at least for purposes of this motion for a preliminary injunction, the Court finds that the government has failed to follow its own regulations and procedures in its delay in processing this appeal and in its improperly conducted attempts to modify the original "Oral Decision" of the immigration judge. Each of these acts constitutes an abuse of discretion. Because the government has failed to follow proper procedures in handling the appeal, the Court finds that the appeal of the original, valid decision has been abandoned. With no appeal pending, no grounds exist for plaintiff's continued detention. Thus, plaintiff has shown a substantial likelihood of success on the merits of his claim that he is entitled to immediate release.

Addressing the other requirements of preliminary injunctions, the Court has little difficulty finding that plaintiff will suffer irreparable injury unless the injunction issues. Few injuries are as severe as loss of freedom, especially in view of the present environment at the penitentiary. The

Court finds that plaintiff has satisfied this requirement for injunctive relief.

Next, the Court finds that the threatened injury to plaintiff outweighs any potential damage to the government's interests if the injunction issues. Continued detention at the penitentiary is far worse than most fates imaginable. The Court finds that the government's interest in detaining plaintiff is outweighed by the harm to plaintiff of continued detention, particularly when plaintiff has several family members who are United States citizens and who should be able to provide him support.

Finally, the Court considers whether plaintiff's release would be opposed to the public interest. The Court finds that would not. Plaintiff's conviction, although serious, was for a non-violent crime for which he has served his sentence. The transcript from his exclusion hearing suggests that the immigration judge found him sincere in his statement that he has recognized his mistake. Further, the Court finds that the public interest is actually harmed when the public's confidence and pride in our government are tested by an administrative snafu that leaves a man sitting for months in prison in legal limbo, even though he has been granted political asylum by an immigration judge. Consequently, the Court finds that plaintiff is entitled to a preliminary injunction directing his immediate release.

Accordingly, the Court hereby DIRECTS defendants to release plaintiff from custody no later than Wednesday, June 26, 1985, at 4:00 p.m.

## ON MOTION FOR RECONSIDERATION

At approximately 4:30 p.m., June 24, 1985, the government moved the Court to reconsider its June 21, 1985 grant of a preliminary injunction directing that plaintiff be released from the Atlanta Federal Penitentiary by 4:00 p.m., June 26, 1985.

---

was stated for the record on October 29 indicates that the government considered the October 29 "Oral Decision" to be *the* decision of the immigration judge, even though it was unsigned.

If the immigration judge's "decision" was actually the later, revised "Oral Decision," the government's notice of appeal was premature.

The Court selected the June 26 deadline for release so that the government, if it chose, would have an opportunity to move the Eleventh Circuit Court of Appeals for a stay pending appeal.

The government's motion to reconsider relies on the Board of Immigration Appeals' June 19, 1985 decision, which apparently first became known to government counsel on June 24, 1985. In that decision, the Board of Immigration Appeals (BIA) sustained INS's appeal of "a decision dated May 14, 1985" by an immigration judge who, on October 29, 1984, had issued an "Oral Decision" granting political asylum to plaintiff.

The June 19 BIA decision provides no support for the government's motion to reconsider; on the contrary, the BIA decision confirms the Court's findings in its June 21 order granting the preliminary injunction. The immigration judge purported to issue two substantially different "Oral Decisions." The first of these, the "Oral Decision" stated for the record by the immigration judge on October 29, 1984, was a valid decision according to 8 C.F.R. § 236.-5(a), (b), and the government filed its notice of appeal immediately after that decision was rendered. The second "Oral Decision," which was signed by the immigration judge on May 14, 1985 and which added a finding wholly inconsistent with a grant of asylum, did not supersede or revise the earlier, valid "Oral Decision."

The government apparently has not even attempted to comply with the regulations of 8 C.F.R. that would allow it to modify or revoke the valid October 29 "Oral Decision." *See, e.g.,* 8 C.F.R. §§ 3.2, 3.8 (procedures governing motions to reopen or to reconsider), 208.15 (procedures governing termination of asylum status). Thus, the October 29 "Oral Decision" remains the only valid decision of the immigration judge. BIA's June 19 decision addressed the immigration judge's "decision dated May 14, 1985."[1] This fact confirms what the Court had anticipated in its June 21 order:

> This modified "Oral Decision" apparently is the subject of whatever appeal proceedings are now in progress. The Court concludes that the government has abandoned any appeal of the original and valid "Oral Decision."

Order of June 21, 1985 at 14.

In short, BIA's June 19, 1985 decision only bolsters this Court's finding that because of the government's delay and its failure to follow its own regulations in attempting to modify the original October 29 "Oral Decision" of the immigration judge, the government has abandoned its appeal of that original, valid "Oral Decision."

Accordingly, the government's motion to reconsider is DENIED; however, so that the government may have a further opportunity to seek a stay of the preliminary injunction pending appeal, the Court EXTENDS until noon Friday, June 28, 1985, the time by which plaintiff must be released.

---

1. As the Court pointed out in its June 21, 1985 order at footnote 5, if the immigration judge's "decision" was actually this May 14, 1985 revised "Oral Decision," the government's filing of its notice of appeal on October 29, 1984 was premature.