**Joe BORDEN, Petitioner-Appellee,**

v.

**Edwin MEESE, Alan Nelson and Louis M. Richard, Respondents-Appellants.**

No. 85–8506.

United States Court of Appeals, Eleventh Circuit.

Nov. 12, 1986.

---

Nina R. Hickson, Asst. U.S. Atty., Atlanta, Ga., for respondents-appellants.

Richard Prinz (Court-appointed) Houston, Tex., for petitioner-appellee.

Before TJOFLAT and ANDERSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

The Immigration and Naturalization Service (INS) appeals from the district court's grant of habeas corpus relief pursuant to 8 U.S.C. § 1105a(b) (1982), see Borden v. Meese, 622 F.Supp. 1133 (N.D.Ga., 1985). The district court ruled that the INS abandoned its administrative appeal from an immigration judge's grant of Borden's application for asylum. Finding that the Board of Immigration Appeals' conclusion that the INS had not abandoned its appeal was not unreasonable, we reverse.

I.

Joe Borden arrived in the United States illegally as part of the 1980 Mariel boatlift and was paroled into the country.[1] On August 13, 1982, he pled guilty in a Texas state court to possession of cocaine and was sentenced to prison. Upon serving his sentence, Borden was released to the custody of the INS on June 29, 1984, and is currently being detained in the Atlanta penitentiary.

At an exclusion hearing held on October 29, 1984, an immigration judge found Borden excludable under 8 U.S.C. § 1182(a)(20), (23) (1982) for lacking a valid entry document and because of his drug-related conviction. During the hearing, Borden applied for asylum pursuant to 8 U.S.C. § 1158(a) (1982). At the conclusion of the hearing, the immigration judge stated that he would grant Borden's application for asylum. Counsel for the INS construed the judge's statement as a final decision and, on the same day, took an appeal to the Board of Immigration Appeals (BIA).[2] Counsel gave Borden's attorney written notice of the appeal in a letter dated November 30, 1984.[3]

The immigration judge did not issue a formal, written decision following the October 29, 1984 exclusion hearing and did not forward to the BIA the record of that hearing. As a consequence, the INS did

---

1. See 8 U.S.C. § 1182(d)(5)(A) (1982). Borden first entered the United States as a child and attended public school in Florida in the late 1950's. He returned to Cuba in 1961.

2. The INS' appeal from the immigration judge's decision operated to stay the immigration judge's decision granting Borden asylum, and Borden remained in detention awaiting the BIA's adjudication of the appeal. See 8 U.S.C. § 1226(b) (1982); 8 C.F.R. §§ 3.6(a), 236.6

(1985). The INS refused to parole Borden pending the appeal because it considered him a danger to the community.

3. The INS filed with the district court the affidavit of Terry C. Bird, the INS attorney present at Borden's exclusion hearing, who stated that he orally informed Borden's attorney on October 29, 1984 that the INS would appeal the decision.

nothing to prosecute its appeal. On April 25, 1985, Borden brought this suit in the United States District Court for the Northern District of Georgia. He sought preliminary and permanent injunctive orders directing the INS to expedite its appeal and to release him on parole pending appeal. On May 7, 1985, the court convened a hearing on Borden's application for preliminary relief. After an extended colloquy with counsel, the court consolidated Borden's application for a preliminary injunction with the trial on the merits and scheduled that trial for June 14, 1985. *See* Fed.R. Civ.P. 65(a)(2). The court also directed the parties to brief the issue of whether the INS had abandoned its appeal to the BIA and therefore was required to give effect to the immigration judge's purported grant of asylum at the exclusion hearing.

On May 14, 1985, the immigration judge issued a written decision disposing of the issues litigated at the exclusion hearing. The immigration judge found that Borden was an excludable alien, but that he was entitled to a grant of asylum and thus had the right to remain in the United States. At the same time, the judge refused to grant Borden withholding of deportation under 8 U.S.C. § 1253(h) (1982) [4] because Borden, having been convicted of a particularly serious crime, posed a danger to the community. *See* 8 U.S.C. § 1253(h)(2)(B) (1982). Contemporaneously, the immigra-

tion judge forwarded his decision to counsel for the INS and Borden, and instructed the former that the brief to the BIA was due in ten days. The INS filed its brief on May 24, 1985, and Borden filed a brief in response on May 31, 1985. These briefs and the record in Borden's exclusion proceeding were then forwarded to the BIA pursuant to 8 C.F.R. § 3.5 (1985).[5]

On June 14, 1985, the district court held a hearing on Borden's request for a permanent injunction. Borden's counsel argued that, at the end of the October 29, 1984 exclusion hearing, the immigration judge granted Borden asylum, and that his decision thus became the final decision of the agency because the INS failed to file a timely brief in support of its appeal as required by 8 C.F.R. §§ 3.3(c), 236.7(c) (1985) and because the record of the proceeding was not forwarded to the BIA upon expiration of the time for filing briefs as required by 8 C.F.R. § 3.5 (1985). The INS argued that the court lacked jurisdiction to determine whether the INS abandoned its appeal. It contended that the BIA should and would make that determination in processing the INS' pending appeal. The court announced that it would take the issue under advisement and adjourned the hearing.

On June 19, 1985, the BIA decided the INS' appeal, finding that Borden posed a danger to the community because of his

**4.** 8 U.S.C. § 1253(h) (1982) provides:

**(h) Withholding of deportation or return**

(1) The Attorney General shall not deport or return any alien (other than an alien described in section 1251(a)(19) of this title) to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.

(2) Paragraph (1) shall not apply to any alien if the Attorney General determines that—

(A) the alien ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion;

(B) the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States;

(C) there are serious reasons for considering that the alien has committed a serious nonpolitical crime outside the United States prior to the arrival of the alien in the United States; or

(D) there are reasonable grounds for regarding the alien as a danger to the security of the United States.

The withholding of deportation issue was before the immigration judge at the October 29 hearing because, under 8 C.F.R. § 208.3(b) (1985), all requests for asylum are also considered as requests for withholding of deportation or exclusion.

**5.** Although the record does not indicate precisely when the record of the proceeding was forwarded to the BIA, the issuance of the BIA's decision on June 19, 1985 indicates that it probably received the record in early June.

drug-related conviction. The BIA determined that Borden should not be granted asylum or a `withholding of deportation.[6] In reaching this conclusion, the BIA explicitly rejected Borden's claim that the INS had abandoned its appeal; it held that the INS had complied with the appropriate federal regulations in processing the appeal.

On June 21, 1985, the district court, apparently unaware of the BIA's decision, decided Borden's claim for injunctive relief.[7] The court held that the INS had abandoned its appeal, thus making the immigration judge's October 29, 1984 statement, that Borden was entitled to asylum, the final decision of the agency. The INS received a copy of the BIA's decision on June 24, 1985 and immediately moved the district court to reconsider its June 21, 1985 order, appending to its motion a copy of the BIA's decision. The district court denied the motion but modified its order to require that Borden be released no later than June 28, 1985. The INS filed a notice of appeal on June 26, 1985, as well as an emergency motion for a stay pending appeal which this court granted.

## II.

■ The federal habeas corpus statute applicable to Borden's claim in the district court[8] provides that "[a]n order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations...." 8 U.S.C. § 1105a(c) (1982). Borden's complaint, which on its face sought to expedite the INS' appeal so that he could bring a habeas corpus action in federal court, was untimely under section 1105a, because Borden had not exhausted his administrative remedies.[9] When the district court, at the May 7 hearing, raised the issue of whether the INS had abandoned its appeal before the BIA and thus whether Borden had exhausted his administrative remedies, Borden recast his claim for relief. Rather than merely seeking an order expediting the INS' appeal, he sought an order directing the INS to release him pursuant to the immigration judge's October 29, 1984 grant of asylum. On June 21, 1985, the district court ordered this release.

■ We hold that the district court erred in concluding that the immigration judge's grant of Borden's application for asylum was the final decision of the agency. The regulations governing appeals from the de-

---

**6.** In effect, the BIA reversed the immigration judge's grant of asylum and affirmed the judge's refusal to grant withholding of deportation.

**7.** Although issued two days after the BIA's decision, the district court's order did not refer to that decision. The record indicates that neither party was informed of the BIA's decision until June 24, 1985; we therefore conclude that the court was unaware of the decision at the time it entered its June 21 order.

**8.** 8 U.S.C. § 1105a(b) (1982) provides that "any alien against whom a final order of exclusion has been made ... may obtain judicial review of such order by habeas corpus proceedings and not otherwise." Counsel for both parties agreed at oral argument that Borden's complaint should be treated as a petition for habeas corpus under section 1105a(b).

**9.** Borden's complaint implicitly recognizes this situation. As we have noted, his complaint sought only his release from detention *pending* the BIA's resolution of the INS' appeal. Borden, in effect, requested the court to grant him pa-

role. Borden's attorney made this clear at the May 7, 1985 hearing:

> Judge, we are not asking that you grant the man asylum, obviously. We are asking that he be paroled, that you find that the Attorney General and the District Director have abused their discretion in not granting the man parole.
>
> The Board of Immigration Appeals will decide if the immigration judge's decision is correct or incorrect. If they decide it's incorrect, then the case goes back to the immigration judge who would probably—who might find asylum against, might not find asylum again.
>
> Obviously, Borden would have his right to appeal to the Board of Immigration Appeal[s] then. The whole process could last five or six years, Judge. I presume the Government would want to keep him in confinement all that time.

Borden's failure to request relief on the merits of the abandonment claim, which he eventually raised in his brief to the BIA, suggests that he did not consider the matter properly before the district court when the complaint was filed.

cision of an immigration judge establish the following procedure: an immigration judge's decision may be oral, stated at the conclusion of the hearing, or it may be in writing. 8 C.F.R. § 236.5(a–c) (1985). An appeal from either type of decision lies in the BIA. 8 C.F.R. § 236.7(a) (1985). The INS must appeal the immigration judge's decision within five days and must notify the applicant in writing when an appeal is taken. 8 C.F.R. § 236.7(c) (1985). The applicant has five days after receiving the notice of appeal to file a written response. *Id.* Briefs must be filed within the time fixed for appeal, "or within any other additional period" designated by the immigration judge. 8 C.F.R. § 3.3(c) (1985). The entire record of the proceeding, including the briefs, are then to be forwarded to the BIA "upon timely receipt of the briefs of the parties, or upon expiration of the time allowed for the submission of such briefs." 8 C.F.R. § 3.5 (1985).

In the Atlanta district, these regulations are supplemented by local procedures promulgated by that district's immigration judge.[10] Because these procedures had not been reduced to writing when Borden filed his complaint in the district court,[11] the INS filed with the court the affidavit of Terry C. Bird, INS counsel, who described the appeals procedure in effect in the Atlanta district. Bird explained that the records of proceedings involving Cubans detained at the Atlanta penitentiary are maintained by the INS clerks until the conclusion of each individual's hearing. If the INS appeals the immigration judge's decision, a notice of appeal is submitted in triplicate either to the immigration judge or to the clerk maintaining the record. The record of the exclusion proceeding is then transcribed from the tape recording, and the transcript of the oral decision is sent to the immigration judge for his signature. At this point, the office of the immigration judge sends the transcript of the hearing and the signed decision to counsel for both parties and instructs them to submit briefs on appeal within a specified period of time. Upon receipt of these briefs or the expiration of the allotted time, the immigration judge sends the record of proceeding to the BIA.

Here, the record shows that these local procedures were followed in processing the INS' appeal. The INS filed a notice of appeal on October 29, 1984, the day of Borden's exclusion hearing. The tape of the hearing and the statement of the immigration judge were transcribed. The immigration judge, however, never signed the transcription of his oral statement. Instead, he issued a written decision that included a denial of withholding of deportation, which was sent to counsel with a briefing schedule. When he received the briefs, the immigration judge forwarded the record of the exclusion proceeding to the BIA.

■■■ The BIA determined that the procedures employed in processing the INS' appeal did not violate federal regulations governing appeals from decisions of immigration judges. Courts accord great deference to the interpretations of statutes and regulations by the agency charged with administering that regulatory scheme. *See EPA v. National Crushed Stone Association,* 449 U.S. 64, 83, 101 S.Ct. 295, 307, 66 L.Ed.2d 268 (1980). The agency's interpretation need not be the only reasonable one, or even the one we would reach if we were initially to decide the question. The agency's interpretation will be upheld if it is reasonable. *See American Paper Institute v. American Electric Power Service Corp.,* 461 U.S. 402, 422–23, 103 S.Ct. 1921, 1933, 76 L.Ed.2d 22 (1983).

■■■ The BIA's interpretation of the relevant federal regulations is reasonable.

---

**10.** We assume that these local rules still apply in the Atlanta district.

**11.** Although Bird informed the district court at the June 14, 1985 hearing that the local procedures would soon be published, we are not aware of such a publication.

Borden contends that the INS, in violation of 8 C.F.R. §§ 3.3(c), 236.7(c) (1985), failed to file its brief within the five days allotted for appeal of the immigration judge's oral decision. Borden ignores, however, that section 3.3(c) also permits the immigration judge to grant an extension of the time for the filing of briefs. The local procedure employed in the Atlanta district, in effect, provides for an automatic grant of an indefinite extension until the signed, written decision is sent to the parties. Once it received the immigration judge's written decision, the INS filed its brief within the ten-day period allotted by that judge. *See* 8 C.F.R. § 3.3(c) (1985). Finally, the BIA determined that the delay in processing the INS' appeal did not violate federal regulations. We view the BIA's interpretation of these regulations as entirely reasonable.[12]

Accordingly, the district court's grant of Borden's habeas petition is

VACATED.

12. Nor do we share the district court's view that the immigration judge's written decision constituted an invalid attempt to modify his statement given at the October 29 exclusion hearing. Under the local procedures, as described by the INS during the May 7 and June 14 hearings before the district court, the unsigned transcription of the immigration judge's oral statement serves as a draft, which may be revised before it is signed by the immigration judge, sent to the parties, and eventually forwarded to the BIA. The case before us illustrates the occasional need to make such revisions. At his exclusion hearing, Borden applied for asylum. Under 8 C.F.R. § 208.3(b) (1985), all requests for asylum are also considered as requests for withholding of exclusion or deportation. Thus, the issue of whether to grant Borden withholding of depor-

tation was also before the immigration judge at the October 19, 1984 hearing. Although the immigration judge stated that he would grant Borden's request for asylum, there was still a need to rule on the withholding of deportation issue; if the BIA were to vacate the grant of asylum, the request for withholding of deportation would have remained unadjudicated. In preparing his signed decision to be sent to the parties and forwarded to the BIA, the immigration judge included his decision to deny Borden's request for withholding of deportation. The inconsistency between the denial of withholding of deportation and the grant of asylum merely suggests that one of the rulings was in error, a result confirmed by the BIA when it vacated the immigration judge's grant of Borden's application for asylum.