John DILLARD, et al., Plaintiffs,

v.

TOWN of NORTH JOHNS, Defendant.

Civ. A. No. 87–T–1267–N.

United States District Court,
M.D. Alabama, N.D.

April 12, 1989.

James U. Blacksher, Edward Still, Reeves & Still, Birmingham, Ala., Julius L. Chambers, Scherlyn Ifill, NAACP Legal Defense Fund, New York City, for plaintiffs.

Don Siegelman, Ala. Atty. Gen., Susan Russ, Asst. Atty. Gen., David Boyd, Balch & Bingham, Montgomery, Ala., James Price, Mayor, Adger, Ala., William A. Short, Jr., Bessemer, Ala., for defendant.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

In this lawsuit, plaintiffs have filed a motion for additional relief charging defendant Town of North Johns with violating § 2 of the Voting Rights Act of 1965, as amended, by intentionally withholding candidacy requirement information and forms from two African–Americans, plaintiffs Lovell Richardson and Haywood Jones, who were elected to the town council.[1] Plaintiffs ask that North Johns be required to certify Richardson and Jones as duly elected members of the town council even though they did not fulfill all legal requirements for candidacy. For the reasons that follow, the court concludes that the town violated § 2 and that the plaintiffs are thus entitled to appropriate relief.[2]

---

1. Section 2 is codified at 42 U.S.C.A. § 1973.

2. Plaintiffs also charge the town with violating the consent decree previously approved by the

court. They argue that implicit in the consent decree is the town's commitment to conduct elections in a nondiscriminatory manner and

## I. FACTUAL FINDINGS

This lawsuit originally arose as one of a series of such suits, some still pending in this court, charging that the at-large election systems and various features of those systems used by many cities, counties and county school boards across Alabama are racially discriminatory. *See Dillard v. Baldwin County Board of Education*, 686 F.Supp. 1459 (M.D.Ala.1988). The Town of North Johns conceded that its at-large system for electing members of the town council was racially discriminatory in violation of § 2, and the parties entered into a consent decree which was eventually approved by this court on June 9, 1988. Under the terms of that decree, the town adopted a new electoral system consisting of five single-member districts, with each council member serving a four-year term. The decree also required the town to appoint black citizens as poll workers in proportions reflecting the racial composition of the town population. Mayor James Price, Sr., signed this decree as the town's representative.

The town thereafter prepared for the upcoming August 1988 elections. Candidates wishing to run for mayor or councilmember faced a July 19 deadline to file their statement of candidacy with the town clerk, Wanda Gwin. The town also required each candidate to pay a $25 registration fee. In addition to meeting the town's requirements for candidacy, each candidate for municipal office faced certain requirements imposed by state elections law.

The State of Alabama requires each candidate for public office to file a statement of economic interest with the state ethics commission within five days of announcing his candidacy. 1975 Ala.Code § 36–25–1. But of particular relevance in this case, in late March 1988, the state enacted Act 88–117, amending § 17–22–5 of the 1975 Code of Alabama to apply to municipal as well as state elections. That statute as amended requires each candidate for local office to file with the probate judge of his county a description of his campaign finance committee within five days of announcing candidacy for office.[3] The statute forbids any candidate from personally spending money on his own campaign, except that the candidate may contribute to his committee's campaign fund. After the election, each candidate's committee must file detailed statements of campaign expenditures and contributions with the probate judge. § 17–22–9. Unopposed candidates are not subject to this final requirement. *Id.* Act 88–117 did not officially take effect until it was "precleared" by the United States Justice Department sometime between its enactment and the August 1988 elections.[4]

The state does not impose a duty on any entity other than the candidate himself to meet the requirements of §§ 17–22–5 and 36–25–1. The state expects candidates to obtain the necessary forms and instructions through a distribution network composed predominantly of local officials. A pamphlet produced by the Secretary of State's office on the effect of Act 88–117 on local elections instructed candidates that forms would be available through the city clerk, the county probate office, and the Secretary's office. For the August 1988 elections, however, the Secretary's attempts at distribution of this information consisted solely of a mailing of forms and pamphlets to city clerks across the state. Thus, the state intended that each city, including North Johns, would play a critical role through its clerk in the hurried implementation of Act 88–117.

Wanda Gwin, for two reasons, did not fulfill this critical role. First, the Secretary of State did not mail the Act 88–117 forms to the correct address and she therefore never received them from the state.

that the actions of town officials violated this implicit duty. Because the court finds that the plaintiffs are entitled to relief on their § 2 claim, the court does not reach their alternative claim.

3. Evidence adduced at trial established that the state extended the filing time for municipal candidates in the 1988 election to ten days from the date of announcement of candidacy.

4. The parties were unable to enlighten the court as to the exact date of preclearance. *See* § 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C.A. § 1973c.

Second, Gwin felt no obligation as town clerk to learn the legal requirements placed on candidates for elected positions in North Johns. Rather, she relied entirely on Mayor Price for direction and guidance in conducting the August 1988 election. She assumed that, if there was anything new to be learned about the upcoming election, Mayor Price would find out, and either he would tell her about any new requirement or he would take it upon himself to make sure that whatever needed to be done was done properly regarding the new requirement. Mayor Price therefore provided substantial assistance to Gwin in the election and, to this extent, assumed her role and duties.

All five seats on the council, as well as the office of mayor, were up for election in August 1988. In four of the six positions open in that election, only one candidate had registered to run by the July 19 deadline for announcement of candidacy. James Price, Sr., was the only candidate for mayor. Jimmy Thomas was the only candidate for councilmember from district 2; Jeffrey Gwin, the town clerk's husband, was the only candidate for councilmember from district 3; and James Price, Jr., the son of the mayor, was the only candidate for councilmember from district 4. Lovell Richardson and Leo Crumpton both announced their candidacy for the district 5 position; and Haywood Jones and Jerry D. Hutcheson both announced their candidacy for the district 1 position. All of these municipal candidates are white, except Thomas, Jones and Richardson, who are black.

Thomas, the unopposed black candidate, had previously been elected to the North Johns city council under the at-large system. Jones and Richardson saw a greater opportunity under the new single-member districting scheme to be elected to the town council as black candidates. If elected they would join Thomas and the two unopposed white candidates as councilmembers, and the town council would become majority black.

On July 19, Wanda Gwin distributed two forms to each candidate: a statement of candidacy form and a statement of economic interest form required by § 36-25-1. Mayor Price had provided the forms to Gwin and had explained to her how they were to be filled out. The candidates returned their statements of candidacy to Gwin, along with the filing fee, and sent the other forms to the ethics commission in Montgomery.

Gwin also told each candidate that he had to file another form with the probate judge within five days, but she knew little about this form, could not identify it for the candidates, and had no copies at her disposal. The form to which Gwin referred was the campaign finance committee form to be filed with the county probate judge pursuant to Act 88-117.[5] She learned about this form from Mayor Price, who, though he had copies, did not give her any.

Mayor Price had read about the passage of Act 88-117 in a publication of the League of Municipalities, and had contacted the League for information regarding the new requirements. The League referred him to the Alabama Secretary of State's office. He contacted the Secretary of State's office, and requested the appropriate forms. This office sent him the necessary forms to comply with Act 88-117, and authorized him to make additional copies as necessary to meet the local needs of North Johns. Mayor Price made copies of the form for the town's local candidates.

Although Gwin directed each candidate to go to the probate judge's office to obtain the Act 88-117 forms, no candidate except Richardson and Jones attempted to do so. Rather, all other candidates, including Hutcheson and Crumpton, Richardson's and Jones's opponents, obtained their campaign finance committee forms from Mayor Price. Mayor Price sought out these candidates to make the forms available to them. He also collected the completed forms from some or all of them, and delivered them to

5. Jones testified that he may have received the campaign finance committee form from Wanda Gwin on the qualifying deadline, but that he was not sure. Given the consistent testimony of all other candidates, as well as Gwin herself, the court finds that Jones did not receive that form from Gwin. Apparently Jones has confused this form with other forms handed out by Gwin.

the probate judge for filing. Richardson and Jones were totally unaware of the mayor's efforts to help all other candidates.

Richardson followed Gwin's advice and proceeded to the office of the local deputy probate judge to obtain the forms required by Act 88–117. That office did not have the forms, however, and indeed the personnel there knew little about them. Richardson spoke to two clerks in the probate office, the second of whom informed him that he would not have to file forms if he did not employ a secretary and did not plan to solicit funds for the campaign. Richardson then spoke with the deputy probate judge who informed him that she had never received any information from the Secretary of State regarding the effect of Act 88–117, and was unaware of the new duty to file placed on local candidates by that act. She told him that, while "it sounds silly," he would have to do whatever the officials in the Town of North Johns told him to do. The deputy probate judge stated that her office had no control over, or involvement in, the regulation of city elections.

Frustrated in his attempt to comply with all candidacy requirements, Richardson returned to the North Johns city council office, where he saw Mayor Price collecting and preparing some qualification forms. When Richardson asked Mayor Price where he could obtain the necessary forms, the mayor refused to assist him and responded, "The Probate Judge's office, I guess." The next day Richardson returned to the probate office, which again failed to assist him, and referred him back to the Town of North Johns officials. Richardson also contacted the state district attorney's office and the office of his federal congressional representative to inquire about the required forms, to no avail.

In light of his consistent inability to obtain any information about the forms from government offices, Richardson relied on the alleged statements of the clerk at the probate office, to the effect that he was not required to file the forms in his circumstance, since he employed no campaign workers and anticipated no campaign expenses. Richardson also informed Jones of this statement by the probate clerk, and, in reliance on that information, Jones did not file a campaign finance statement either.

At some point prior to the election but after the deadline for filing Act 88–117 forms, Jones attended a meeting of the town council, at which the subject of his filing the necessary forms arose. Jones stated to the council his belief, based on Richardson's representation, that he was not legally required to file the campaign finance committee form. Mayor Price then belatedly advised Jones to file the form. Mayor Price did not offer the appropriate form to Jones, however, and Jones did not follow the mayor's advice.

At some point prior to the election, Hutcheson, who was Jones's opponent, complained to Mayor Price about Jones's apparent noncompliance with the filing requirements. On the mayor's advice, Hutcheson signed a written protest to the appearance of Jones's name on the ballot. After again conferring with the League of Municipalities, Mayor Price contacted the Alabama Attorney General's office for advice. This office responded with the suggestion that the town proceed with the election, "and if them's not your favorite candidates, or the ones you want to win, maybe they'll lose." Mayor Price also contacted the local district attorney's office. This office apparently never committed to any particular position on the protest.

In any event, Richardson and Jones remained candidates in their respective races. The election occurred on August 23, 1988. Richardson defeated Crumpton by a total of 11 votes to 4; Jones defeated Hutcheson by a total of 13 to 11. With their election, the town council had three African–American members and two white members. Mayor Price refused, however, to swear Jones and Richardson into office. The town clerk, Wanda Gwin, thereafter filed an action against Jones and Richardson in state court seeking declaratory and injunctive relief regarding their failure to comply with Act 88–117. The plaintiffs in the instant lawsuit responded with the pending motion for additional relief charging the

Town of North Johns with violating § 2 of the Voting Rights Act of 1965, as amended, and seeking to require that the Town certify Jones and Richardson as duly elected members of the town council. Jones and Richardson were allowed to intervene as plaintiffs.

## II. DISCUSSION

As this court has often stated, a violation of § 2 of the Voting Rights Act is established if action was taken or maintained with a racially discriminatory "intent" or the action has racially discriminatory "results," determined according to certain congressionally approved criteria. *McMillan v. Escambia County,* 748 F.2d 1037, 1046 (former 5th Cir.1984); *Dillard v. Baldwin County Board of Education,* 686 F.Supp. 1459, 1460 (M.D.Ala.1988). The plaintiffs claim that North Johns violated § 2 by intentionally withholding forms and information regarding Act 88–117 from Jones and Richardson because they are African–Americans.

█ The court agrees with plaintiffs, and so finds, that North Johns, through its mayor, intentionally discriminated against Jones and Richardson because of their race. This finding is based on evidence that Mayor Price helped all candidates for municipal office except Jones and Richardson. Mayor Price not only failed to make the Act 88–117 forms and information available to Jones and Richardson, he expressly refused to provide them when Richardson asked him for help at the town council office. The mayor was aware that Jones and Richardson, as black candidates, were seeking to take advantage of the new court-ordered single-member districting plan and that their election would result in the town council being majority black. The court is convinced that Mayor Price acted as he did in order to prevent this result, or at least not to aid in achieving it. The court is convinced that, but for Jones and Richardson's race, Mayor Price would have acted toward them as he acted toward the other candidates; he would have provided to them, in a timely manner, the informa-

tion and forms necessary to meet the requirements of Act 88–117. The court is further convinced that, but for the mayor's discriminatory conduct, Jones and Richardson would have fulfilled all candidacy requirements.

█ The Town of North Johns offers a number of arguments in response to the above characterization of Mayor Price's actions. First of all, the town argues that it owed no duty to Jones and Richardson to assist them in complying with the state's legal requirements for candidacy, and that the legal requirements for candidacy lie not with the town or any of its officials but with the individual candidates. The court agrees with the town's argument—however, the argument misses the point. The town correctly points out that, under Alabama law, even where state officials may attempt to bring election information to the attention of all citizens through local channels, each candidate for office still bears the sole responsibility for the timely filing of all necessary forms. Therefore, if North Johns, acting through its mayor, had declined or failed to provide Act 88–117 forms and information to all municipal candidates or had declined or failed to do so as to only certain candidates but without regard to race or some other "legally suspect" characteristic, then the town could generally not be faulted under federal law. *E.g., E & T Realty v. Strickland,* 830 F.2d 1107 (11th Cir.1987) (discussing violations under the equal protection clause), *cert. denied,* ⸺ U.S. ⸺, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988). But under § 2, when government officials take it upon themselves to dispense election information that they are not otherwise legally obligated to dispense, be it merely candidacy requirement information, those officials may not do so in a racially discriminatory manner. *Cf. Ammons v. Dade City,* 783 F.2d 982 (11th Cir.1986) (per curiam) (provision of municipal services in violation of the equal protection clause); *Dowdell v. City of Apopka,* 698 F.2d 1181 (11th Cir.1983) (same). Therefore, once North Johns voluntarily proceeded to provide Act 88–117 forms and information to any candidates,

the town had to do so in a racially nondiscriminatory manner or run afoul of § 2.

The town next argues that Mayor Price acted, not as a town official, but as a friend when he provided the Act 88–117 forms and information to all council candidates except Jones and Richardson. The town contends that such private conduct, even if racially discriminatory, is not prohibited by § 2. The evidence convinces the court, however, that Price was acting in his official capacity as mayor and in his de facto capacity as assistant to the town clerk in the dispensing of election information. North Johns is a very small community, and it is apparent that most official things are done informally. For example, as stated, although the town clerk officially bore the responsibility for elections, including dispensing election information and forms, she unofficially relied on the mayor to meet her obligations; she assumed that, together, she and the mayor would make sure everything was done properly for an upcoming election. The court is therefore convinced that, when Price obtained the Act 88–117 information and forms and when he dispensed the information and forms to all council candidates, except Jones and Richardson, he did so for the town, as mayor of the town and as the local official responsible for dispensing election information and materials.

The town argues that Mayor Price could not have acted racially in dispensing the Act 88–117 forms and information because he gave the forms not only to white candidates but to Thomas, who is black. The critical differences, however, in the mind of the mayor between Thomas's posture and that of Jones and Richardson were, first, that Jones and Richardson faced white opponents and, second, that with the election of Jones and Richardson the town council would become majority black. The court is convinced that Jones and Richardson's color was the critical factor in Mayor Price's decision not to help them.

Finally, the town points out that Mayor Price eventually informed Jones of the requirements of Act 88–117, but that Jones refused to heed the mayor's advice. The court cannot overlook, however, that Mayor Price refused to assist Richardson, and that Price's "advice" led Richardson to wander unnecessarily and fruitlessly in the dark, going back and forth from the town office to the probate office, seeking someone who could provide him with the new forms. The court is convinced that, after having learned of these circumstances from Richardson, Jones acted reasonably when he did not believe the mayor, especially because the mayor still did not provide the needed forms and because his advice may have come too late to help Jones. In any event, the mayor's belated assistance to Jones did not equal that which he gave other candidates.

### III. REMEDY

The plaintiffs request an order from the court enjoining North Johns to certify Richardson and Jones as duly elected members of the town council. It is undisputed that this court bears substantial equitable authority to remedy § 2 violations. *See Dillard v. Crenshaw County,* 831 F.2d 246 (11th Cir.1987); *United States v. McLeod,* 385 F.2d 734, 748–49 (5th Cir. 1967). Of particular relevance is this circuit's long-standing view that, in the face of proven racial discriminatory conduct by officials affecting the fairness of the elections, a federal court has the authority to order a new election. *See Toney v. White,* 488 F.2d 310 (5th Cir.1973) (en banc); *Bell v. Southwell,* 376 F.2d 659 (5th Cir.1967).

The court is of the opinion that the plaintiffs' requested relief is appropriate given the posture and peculiar circumstances of this case. Neither plaintiffs nor North Johns contends that the town's violation of § 2, or that Jones and Richardson's failure to meet all candidacy requirements, impugned the fairness of the outcome of the election. The plaintiffs seek only a validation of that outcome, which is placed in doubt by the actions found above to violate § 2. Since plaintiffs have appropriately tailored their proposed remedy to fit the form of the violation charged, *Dillard,* 831

F.2d at 253, this court will award such relief.[6]

An appropriate judgment will be entered.

---

**6.** The plaintiffs suggested at the trial of this cause that Mayor Price should be held individually—that is, personally—liable for any attorney fees awarded in this cause. To accede to this request would violate Mayor Price's right to due process of law. Mayor Price has not been made a party to these proceedings in his individual capacity, nor did he receive notice before trial that plaintiffs would seek to have him held accountable for attorney fees in his individual capacity.