Mark "Bo" RITTER, et al., Plaintiffs,

v.

Jim BENNETT, in his capacity as Secretary of State of the State of Alabama, et al., Defendants.

No. Civ.A. 98–T–991–N.

United States District Court, M.D. Alabama, Northern Division.

Sept. 24, 1998.

Mark "Bo" Ritter, Florence, AL, plaintiff pro se.

A. Mark Ritter, Florence, AL, for Lewis Colley, Barry Hughes, C. Wayne Alexander, plaintiffs.

Charles E. Grainger, Jr., Asst. Atty. General, Alabama Secretary of State's Office, Montgomery, AL, for Jim Bennett, defendant.

John J. Park, Jr., Robert M. Weinberg, Office of the Attorney General, Montgomery, AL, for Bill Pryor, defendant.

Hugh R. Evans, III, Alabama Ethics Commission, Montgomery, AL, for Ethics Commission, of the State of Alabama, defendant.

Edward M. George, Jeffery A. Foshee, Foshee & Associates, Montgomery, AL, for Dewey Mitchell, Richard I. Proctor, Sandy Horsley, Jimmy Stubbs, Jasper Fielding, Raymond Uptagrafft, Clarence Watters, John H. Armstrong, defendants.

Before EMMETT R. COX, Circuit Judge, W. HAROLD ALBRITTON, Chief District Judge, and MYRON H. THOMPSON, District Judge.

### MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge:

This three-judge court has before it three claims alleging that the State of Alabama failed to obtain preclearance of certain matters in violation of § 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C.A. § 1973c. The first claim is that the State failed to obtain preclearance of a financial-disclosure form that individuals seeking election to public office in Alabama are required to file. The second claim is that the State failed to obtain preclearance of the Alabama Ethics Commission's failure to perform the functions required of it by a precleared law. And the final claim is that the State failed to obtain preclearance of the Secretary of State's application of a definition of candidate different from the one prescribed by precleared law. We hold that the State was not required to obtain preclearance for the form or the actions described above.

### I.

Plaintiffs Mark "Bo" Ritter, Lewis Colley, Barry Hughes, and C. Wayne Alexander seek to run for office as independent candidates in the November 1998 general election in Alabama. Ritter seeks to run for District Attorney of Lauderdale County, and Colley, Hughes, and Alexander seek to run for the Alabama House of Representatives in Districts 31, 65, and 7, respectively.

The plaintiffs bring this lawsuit to challenge the Secretary of State's determination that they have not qualified to appear on the ballot for this election year. To qualify for placement on the ballot, independent candidates in Alabama must fulfill certain requirements. Two are relevant to this suit. First, independent candidates must submit a petition signed by a certain number of qualified electors in accordance with § 17-7-1 of the 1975 Code of Alabama.[1] In addition, under § 36-25-15 of the 1975 Alabama Code, candidates must file a financial disclosure form called a "statement of economic interests." This form must be filed "simultaneously with the date" the person seeking elective office becomes "a candidate." Under § 36-25-15 of the Code, the penalty for failure to file the statement of economic interests on the proper date is disqualification from appearing on the ballot. However, the statute does provide the opportunity to obtain an extension of time in which to file.[2]

---

1. Section 17-7-1 provides in part:

 "(a) The following persons shall be entitled to have their names printed on the appropriate ballot for the general election, provided they are otherwise qualified for the office they seek:

 · · · · ·

 (3) Each candidate who has been requested to be an independent candidate for a specified office by written petition signed by electors qualified to vote in the election to fill the office when the petition has been filed with the probate judge, in the case of a county office and with the Secretary of State in all other cases, on or before 5:00 P.M. six days after the second primary election. The number of qualified electors signing the petition shall equal or exceed three percent of the qualified electors who cast ballots for the office of Governor in the last general election for the state, county, city, district, or other political subdivision in which the candidate seeks to qualify."

2. Section 36-25-15 provides:

 "(a) Candidates at every level of government shall file a completed statement of economic interests for the previous calendar year with the appropriate election official simultaneously with the date he or she becomes a candidate as defined in Section 17-22A-2 or the date such candidate files his or her qualifying papers with the appropriate election official, whichever date occurs first.

 "(b) Each election official who receives a declaration of candidacy or petition to appear on the ballot for election from a candidate and each official who nominates a person to serve as a public official shall, within five days of the receipt or nomination, notify the commission of the name of the candidate, as defined in this chapter, and the date on which the person became a candidate or was nominated as a public official.

Section 17–22A–2 of the 1975 Alabama Code, in turn, defines when a person, such as the plaintiffs, becomes "a candidate" and thus needs to file a statement of economic interests. Section 17–22A–2 defines a candidate as, among other things, "[a]n individual who has ... [t]aken the action necessary under the laws of the state to qualify himself or herself ... in the case of an independent seeking ballot access, on the date when he or she files a petition with ... the Secretary of State...." 1975 Ala.Code § 17–22A–2.

The plaintiffs were disqualified for failure to timely file their statements of economic interests; that is, according to the defendants, the plaintiffs did not file the statements when they became candidates. The Secretary of State's Office reasoned that the plaintiffs became candidates within the meaning of § 17–22A–2 when they filed their petitions for ballot access, and therefore should have filed their statements of economic interests at that time. The Secretary of State's Office found that they had not done so and, accordingly, disqualified the plaintiffs.

It is undisputed that none of the plaintiffs filed his statement of economic interests at the time he filed his petition for ballot access and that none asked for an extended period of time in which to file. *Colley* filed his petition for ballot access with the Secretary of State on June 11, 1998. As of September 14, 1998, Colley had not filed a statement of economic interests with the Secretary of State's Office or the Alabama Ethics Commission.[3] *Hughes* filed his petition for ballot access but no statement of economic interests with the Secretary of State's Office on June 11, 1998. On July 1, 1998, he mailed a statement of economic interests by certified mail to the Alabama Ethics Commission,

which received the form on July 5 or 6, 1998. However, Hughes had not requested an extension of time from the Ethics Commission within which to file his statement of economic interests.[4] On July 2, 1998, *Ritter* filed a petition for ballot access with the Secretary of State's Office but did not file a statement of economic interests. Ritter mailed his statement of economic interests to the Alabama Ethics Commission, which stamped it received on July 16, 1998. Ritter had not requested from the Ethics Commission an extension of time within which to file his statement of economic interests.[5] And *Alexander* filed his petition for ballot access on or about May 26, 1998. Alexander contends that he sent his statement of economic interests certified mail to the Secretary of State's Office on June 2, 1998. The Secretary of State disputes this claim. Alexander does not claim that he asked for or received an extension from the Ethics Commission within which to file his statement of economic interests. Thus, even accepting Alexander's contentions as true, there is no dispute that he did not timely file his statement of economic interests.[6]

The Secretary of State's Office sent a letter, dated August 14, 1998, to each probate judge of the counties in which the plaintiffs were running for office, stating that the plaintiffs' names should not appear on the November ballots because of their failure to timely file statements of economic interests.[7] The plaintiffs received copies of this letter on August 20, 1998.[8] On September 2, 1998, the plaintiffs filed a complaint in this court, naming as defendants the Alabama Secretary of State, the Alabama Attorney General, the Alabama Ethics Commission, and the probate judges of the counties in which the

"(c) Other provisions of the law notwithstanding, if a candidate does not submit a statement of economic interests in accordance with the requirements of this chapter, the name of the person shall not appear on the ballot and the candidate shall be deemed not qualified as a candidate in that election. Notwithstanding the foregoing, the commission may, for good cause shown, allow the candidate an additional five days to file such statement of economic interests. If a candidate is deemed not qualified, the appropriate election official shall remove the name of the candidate from the ballot."

3. Joint Stipulations at 1–2.

4. *Id.* at 2, 4–5.

5. *Id.* at 5.

6. *Id.* at 5.

7. *Id.* at 5–6.

8. *Id.* at 6.

plaintiffs are running for office, and seeking declaratory and injunctive relief pursuant to § 5 of the Voting Rights Act of 1965.[9]

## II.

Section 5 of the Voting Rights Act requires that certain jurisdictions, including the State of Alabama, obtain preclearance of any change in a "standard, practice or procedure with respect to voting," 42 U.S.C.A. § 1973c, that has the "potential for discrimination" against African–Americans. *NAACP v. Hampton County Election Commission*, 470 U.S. 166, 181, 105 S.Ct. 1128, 1137, 84 L.Ed.2d 124 (1985). A jurisdiction may obtain preclearance in either of two ways: by securing a determination from the United States District Court for the District of Columbia that the change "does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color," 42 U.S.C.A. § 1973c; or by submitting the change to the Attorney General of the United States and receiving no objection. *Id.* Under § 5, the scope of the three-judge court's inquiry is limited to whether a change "is covered by § 5, but has not been subjected to the required federal scrutiny." *Allen v. State Board of Elections*, 393 U.S. 544, 561, 89 S.Ct. 817, 829, 22 L.Ed.2d 1 (1969).

Put as simply as possible, the plaintiffs contend that their names should be placed on the ballot because they were disqualified from appearing on the ballot pursuant to procedures that were not valid because they had not been precleared under § 5. The plaintiffs claim three separate violations of § 5:(1) the State of Alabama's failure to preclear the statement-of-economic-interests form; (2) the State's failure to preclear the procedures followed by the Ethics Commission, which they allege were different from those mandated by a precleared law; and (3) the State's use of a definition of a candidate different from the one prescribed in a precleared law to determine who has to submit a statement of economic interests and to disqualify individuals who do not file such a statement. We will analyze each of these claims in turn.

## A.

The plaintiffs' first § 5 claim is that the State should have submitted the statement-of-economic-interests form for preclearance and that failure to preclear it renders the requirement of filing the form unenforceable. The defendants contend that the statement-of-economic-interests form did not require preclearance because, first, the State had obtained preclearance of the statutes mandating the filing of the statement of economic interests and prescribing the statement's contents, and, second, the statement-of-economic-interests form conforms to the requirements of the statute.

The defendants have presented evidence proving that the statutes mandating that candidates for public office file a statement of economic interests and prescribing the contents of the statement-of-economic-interests form have been precleared by the United States Department of Justice.[10] Nevertheless, as the Supreme Court recently reiterated, " 'an administrative effort to comply with a statute that ha[s] already received preclearance' may require separate preclear-

---

**9.** The plaintiffs also asserted claims under 42 U.S.C.A. § 1983. Only their § 5 claims, however, are before this three-judge court. Because the § 1983 claims do not present three-judge-court issues, they are being adjudicated by a single judge, Judge Myron H. Thompson, alone.

**10.** By letter dated December 12, 1973, the Justice Department precleared Alabama Act No. 1056, which originally established the requirement that public officials and candidates for public office file statements of economic interests with the Alabama Ethics Commission and prescribed the information required to be disclosed. *See* Attorney General's Supplement to Evidentiary Record, § 1 at 1, § 2 at 7. Act No. 130, 1975 Alabama Legislature, then amended and re-en-

acted Act No. 1056 of the 1973 Alabama Legislature. It was precleared by the Justice Department on October 24, 1975. *See id.* at § 2 at 2. Alabama Act No. 86–321 then amended the Ethics Law's provisions regarding the filing of statements of economic interest by candidates for elected public office in Alabama. It was precleared by the Justice Department on October 21, 1988. *See id.* at § 3 at 2. On September 15, 1995, the Department of Justice precleared Alabama Act No. 95–194, which further amended Alabama's Ethics law. *See* Joint Evidentiary Record, § 12 at 2. Finally, on August 25, 1997, the Department of Justice precleared Alabama Act No. 97–651, which made drafting changes to the Ethics Law. *See* Joint Evidentiary Record, § 13 at 2.

ance." *Foreman v. Dallas County, Tex.*, 521 U.S. 979, ——, 117 S.Ct. 2357, 2358, 138 L.Ed.2d 972 (1997) (per curiam). Thus, the mere fact that the statement-of-economic-interests form was promulgated in an effort to comply with a precleared statute does not automatically exempt it from § 5. Instead, "[t]he question is simply whether the [State], by its actions, whether taken pursuant to statute or not, 'enact[ed] or [sought] to administer any [change in] ... standard, practice, or procedure with respect to voting.'" *Foreman*, 521 U.S. at ——, 117 S.Ct. at 2358. We cannot discern any substantive differences between the actual contents of the statement-of-economic-interests form and the contents prescribed by § 36–25–14. We therefore fail to see how the statement-of-economic-interests form could constitute a change that the State seeks to administer.

■■■ The plaintiffs contend that the statement-of-economic-interests form contains three changes that should have been precleared. First, the plaintiffs note that, while § 36–25–14 states that the penalty for failure to timely file the statement of economic interests is disqualification of the candidate and removal of his name from the ballot, the statement-of-economic-interests form states that the penalty for failure to timely file is a fine. Second, while § 36–25–15 mandates that candidates file the statement of economic interests with the proper election official, which, in the case of an independent candidate for state office, is the Secretary of State, the statement-of-economic-interests form states that the form must be filed in the Ethics Commission Office. As a final 'change' in voting procedure, the plaintiffs note that the statement-of-economic-interests form does not inform candidates of the availability of a filing extension.

First of all, the changes asserted by the plaintiffs were not in the statement-of-economic-interests form itself, but instead in the instructions that attended the form. Moreover, the alleged changes did not concern how the form should be completed, but rather what might flow from failing to file the form as required by law. Thus, we are presented with the question of whether the dissemination of misleading information and the omission of potentially useful information, as opposed to a change in the substantive requirements of the form, constitutes a change subject to § 5 preclearance.

Had the plaintiffs presented evidence that the arguably misleading information on the statement-of-economic-interests form and the information omitted from the form reflect a changed policy on the part of the State, we would arguably be presented with a 'change in standard, practice or procedure' subject to § 5's preclearance requirement. However, the plaintiffs have not presented evidence of such a policy change. First, in disqualifying the plaintiffs, the State applied the provisions of the precleared statute and not the misleading information on the form—that is, the plaintiffs were disqualified rather than fined.[11] Second, there is no evidence that the State rejected any candidates based on their decision to file the statement of economic interests with either the Ethics Commission or the Secretary of State's Office. And, third, there is no evidence that, prior to this election cycle, the State ever included a statement on the form informing candidates of the availability of filing extensions.

■■■ To be sure, as a general proposition, "even where state officials negligently give erroneous information ..., each candidate for office still bears the sole responsibility for the timely filing of all necessary forms which are statutorily required." *Reform Party of Alabama v. Bennett*, 18 F.Supp.2d 1342, 1353 (M.D.Ala.1998) (Albritton, C.J.). *See also Dillard v. Town of North Johns*, 717 F.Supp. 1471, 1476 (M.D.Ala.1989) ("under Alabama law, even where state officials may attempt to bring election information to the attention of all citizens through local channels, each candidate for office still bears the sole re-

---

**11.** The form's reference to a fine was not totally misleading. Not only candidates but also public officials and employees are required to submit statements of economic interests pursuant to 1975 Code of Alabama § 36–25–14. Section 36–25–14 provides for a fine against public officials and employees who fail to comply with the filing

requirement. The statement-of-economic-interests instructions form describes this fine, and thus was not misleading as to public officials and employees. The instructions form does, however, fail to note that candidates are not subject to this fine, but rather are subject to disqualification.

sponsibility for the timely filing of all necessary forms") (Thompson, J.). However, it can still be argued that, because § 5 places an affirmative obligation on the State to assure that not only its laws but also its practices lack the potential for race discrimination, the broad dissemination of misleading information—for example, that a candidate would be fined but not disqualified for failure to timely file a form—could constitute a change within the meaning of § 5. *See Henderson v. Graddick,* 641 F.Supp. 1192, 1201 (M.D.Ala.1986) (three-judge court) ("Once a law has been precleared ... any *practice inconsistent* with the law must itself be precleared or be a violation of Section 5.") (emphasis added). Candidates could be led by the State to believe, rightly or wrongly, that their failure to comply with the financial disclosure requirement could result in only a small monetary fine. *See id.* at 1202 ("Section 5 has been violated when the Attorney General of a state without any Section 5 preclearance ... *incorrectly* advises voters that they can cross over and vote in a runoff because such votes are legal.") (emphasis added). But, in this case, Ritter says he did not file the form because he believed he had not yet met the statutory definition of a "candidate." And there is no evidence that the other plaintiffs were tardy in filing their forms due to this so-called misleading information. We therefore leave this matter for resolution on another day.[12]

To be clear, we emphasize that we do not reach whether, and thus do not hold that, the statement-of-economic-interests form need not be precleared simply because it was promulgated to effectuate a precleared law. Instead, our holding turns on our finding that the statement-of-economic-interests form, as applied to the plaintiffs on the facts as presented to us, does not evidence any change in procedure with respect to voting that the State has administered. Accordingly, we find that the State did not need to submit the statement-of-economic-interests form for

preclearance pursuant to § 5 of the Voting Rights Act.

## B.

 The plaintiffs contend that the Ethics Commission did not comply with Code of Alabama § 36-25-4, which prescribes the duties of the Ethics Commission, and that this alleged noncompliance with a precleared election law was a change in voting procedure that the State should have submitted for preclearance but did not. Specifically, the plaintiffs allege that the Ethics Commission violated provisions requiring it to prescribe forms for statements of economic interests and make the forms available to those persons required to file such statements, to prepare guidelines setting forth recommended uniform methods of reporting for use by persons required to file such statements, and to initiate programs for the purpose of educating candidates, among others, on matters of ethics in government service. *See* 1975 Ala.Code § 36-25-4(a)(1), (2), and (10). We find the plaintiffs' claim to be without merit.

First, the facts presented to this court do not demonstrate that the Ethics Commission abandoned its mandate. While the plaintiffs contend that the Ethics Commission has not prescribed and made available statement-of-economic-interests forms, the evidence shows that the Ethics Commission has created statement-of-economic-interests forms and that many candidates, including the plaintiffs, successfully obtained them. The evidence also shows that the Ethics Commission promulgated guidelines for filing of the statement of economic interests, which it published in the form of an instructions sheet. In addition, the Ethics Commission has submitted evidence that, since the most recent amendments to the Alabama Ethics Law in October 1995, it has conducted 206 educational seminars, including 74 so far this year alone, on matters of ethics in government for various groups around the State of Alabama, and has published 25 newsletters and articles on the Alabama Ethics Law.[13]

---

12. Of course, the Secretary of State would be well advised to correct the misleading information forthwith.

13. *See* Affidavit of Pennie Buckelew, Departmental Programs Manager for the Alabama Ethics Commission, Attachment to Alabama Ethics Commission's Motion to Dismiss, filed September 18, 1998.

■ The plaintiffs have submitted into evidence a memorandum from the Ethics Commission acknowledging that some candidates complained about difficulty in obtaining statement-of-economic-interests forms. At most, this memorandum indicates that the Ethics Commission allowed offices around the state to run short of forms at one point this year.[14] But even if the memorandum did support the plaintiffs' contentions, they would not have a § 5 claim. The failure of state election officials to follow state law is not necessarily a § 5 claim. *See Moore v. Caledonia Natural Gas District*, 890 F.Supp. 547, 551 (N.D.Miss.1995); *Montgomery v. Leflore County Republican Executive Committee*, 776 F.Supp. 1142, 1145 (N.D.Miss. 1991). As noted earlier, § 5 covers only changes in procedure with respect to voting that a state enacts or administers. "One would not normally conclude that a state 'enacts or administers' a new voting procedure every time a state official deviates from the state's required procedures." *Moore*, 890 F.Supp. at 551 (quoting *United States v. Saint Landry Parish School Board*, 601 F.2d 859, 864 (5th Cir.1979)).

The plaintiffs have offered no evidence showing that the Ethics Commission has enacted a new policy under which it will no longer prescribe and make available forms, prescribe guidelines, and educate prospective candidates as to the requirements of the Ethics Law. We accordingly reject the plaintiffs' contention that the Ethics Commission has enacted a change in voting procedure subject to § 5's preclearance requirement.

### C.

■ As their final argument, the plaintiffs contend that the Secretary of State instituted a change in voting procedure by implementing a definition of candidate distinct from the one prescribed by § 17–22A–2 of the 1975 Code of Alabama and that the State's failure to preclear that change was a violation of § 5. The plaintiffs further contend that, under the precleared definition of a candidate, none of the plaintiffs is a "candidate" and therefore none of them had to file a state-

ment of economic interests. For that reason, the plaintiffs argue, the defendants' removal of their names from the ballot for failure to timely submit statements of economic interests was in error.

The plaintiffs' argument turns on their interpretation of § 17–22A–2, which, as stated, defines a candidate. The section provides, in part, as follows:

"(1) An individual who has done any of the following:

a. Taken the action necessary under the laws of the state to qualify himself or herself for nomination or for election to any state office or local office or in the case of an independent seeking ballot access, on the date when he or she files a petition with the judge of probate in the case of county offices, with the appropriate qualifying municipal official in the case of municipal offices, or the Secretary of State in all other cases.

b. Received contributions or made expenditures, or given his or her consent for any other person or persons to receive contributions or make expenditures, with a view to bringing about his or her nomination or election to any state office or local office. Notwithstanding the foregoing, no person shall be considered a candidate within the meaning of this subdivision until the time that he or she has either received contributions or made expenditures as provided herein in the following amounts:

. . . . .

2. Five thousand dollars ($5,000) or more, with a view toward bringing about nomination or election to any state office, excluding legislative office, filled by election of the registered voters of any circuit or district."

1975 Ala.Code § 17–22A–2.

The Secretary of State found that the plaintiffs became "candidates," and thus were required to file their statements of economic interests, at the point in time when they met the requirements of subsection (1)(a). The

---

**14.** However, the memorandum also suggests that, once made aware of the problem, the Ethics Commission took steps to remedy it, by sending more forms to judges' and clerks' offices around the state and by waiving the timeliness requirement as applied to those persons who had experienced difficulty in obtaining the forms.

plaintiffs argue that they did not become candidates until they met the requirements of both subsections (1)(a) and (1)(b). According to the plaintiffs, the portion of the statute providing for $5,000 monetary thresholds for consideration as a candidate, although found solely in subsection (1)(b), applies to both subsections (1)(a) and (1)(b). As a result, they argue, none of them became "candidates" within the meaning of the statute when they submitted their petitions for ballot access, because none had met the monetary thresholds.

In support of their reading of the statute, the plaintiffs make a circuitous argument based on the language used in an explanatory paragraph following § 17–22A–2 in the 1975 Code of Alabama. The plaintiffs' argument is as follows. As shown earlier, subsection (1) of 17–22A–2 defines the term "candidate." This subsection, however, contains two further subsections, labeled (a) and (b). Subsection (a) defines a candidate as an individual who files a petition for ballot access, and subsection (b) defines a candidate as a person who receives contributions or expends funds for the purpose of being elected to public office. A qualifying statement immediately following subsection (b) provides that no one shall be considered a candidate within the meaning of "this subdivision" unless he or she receives contributions or makes expenditures above certain monetary thresholds. The plaintiffs maintain that, although the monetary requirements are contained in only subsection (b), the requirements apply to both subsections (a) and (b), because the words "this subdivision," although found in only subsection (b), refer to the entirety of subsection (1) and thus to both subsections (a) and (b). In support of their argument that the monetary thresholds apply to the entire subsection (1), the plaintiffs point, as stated, to the explanatory paragraph, following § 17–22A–2 and apparently added by

those who codified the section, which uses the word "subdivision" to refer to sections of the statute labeled with numbers.[15] The plaintiffs assume that the authors of the statute must have accorded the word "subdivision" the same meaning as the authors of the explanatory text. Because the section defining the term "candidate" is labeled "(1)," the argument goes, it is a "subdivision." Thus, by using the words "this subdivision" in subsection (b), the plaintiffs contend, the authors of the statute applied the monetary thresholds to all candidates defined in subsection (1) of § 17–22A–2, both (a) and (b), and not just those individuals defined in subsection (b) as candidates by virtue of their receipt or expenditure of funds for campaign purposes.[16]

The plaintiffs also point to a September 3, 1997, press release from the State Attorney General's Office as support for their reading of the statute. At the end of the release, which announced the preclearance of amendments to the Fair Campaign Practices Act, the Attorney General "remind[s] candidates that they also are still required to file a Statement of Economic Interests with the Alabama Ethics Commission immediately upon becoming a candidate by either reaching the higher level of thresholds or upon filing their qualifying papers."[17] Because only major party candidates file qualifying papers, the plaintiffs argue, the Attorney General's statement necessarily implies that individuals unaffiliated with a major party can only become candidates by reaching a monetary threshold. This statement, the plaintiffs contend, shows that the Attorney General agreed with their reading of the statute defining a candidate at the time he issued the press release.

The defendants, on the other hand, read the statute as applying the monetary thresh-

---

**15.** The explanatory language relied upon by the plaintiffs is, in part, as follows:

"The 1997 amendment, effective October 1, 1997, designated the existing provisions as *subsection* (a); substituted 'the' for 'such' throughout; substituted concluding periods for '; or' throughout; in *subsection* (a) redesignated *subdivisions* (9), (10), (11), (12) and (13) as *subdivisions* (10), (11), (12), (14) and (15), respectively, and added present *subdivisions* (9) and (13), in the introductory material deleted

'unless a different meaning clearly appears in the context,' and substituted 'following meanings' for 'meanings ascribed in this section', in *subdivision* (1) inserted 'done any of the following'...."

(Emphasis added.)

**16.** Plaintiffs' Evidence R. 4.

**17.** Plaintiffs' Evidence R. 2.

olds only to candidates as defined in subsection (1)(b). The defendants base their reading on the prefatory language in the code subsection, which defines a candidate as an individual who has done "any of the following." To the defendants, this phrase indicates that subsections (a) and (b) are to be read independently.

Ordinarily, courts accord significant weight to the interpretation of a statute by the agency that is charged with the responsibility of implementing it. *See, e.g., Dawson v. Scott,* 50 F.3d 884 (11th Cir.1995); *Lohr v. Medtronic, Inc.,* 56 F.3d 1335 (11th Cir.1995), *reversed in part on other grounds,* 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996); *Borden v. Meese,* 803 F.2d 1530 (11th Cir. 1986); *McCullar v. Universal Underwriters Life Ins. Co.,* 687 So.2d 156, 163 (Ala.1996); *City of Mobile v. M.A.D., Inc.,* 684 So.2d 1283, 1287 (Ala.1996). The same presumption of validity that attaches to the agency action "applies to a state agency as to a federal agency." *Colorado Health Care Ass'n v. Colorado Department of Social Services,* 842 F.2d 1158, 1164 (10th Cir.1988). Here the Secretary of State's interpretation of the statute appears reasonable. Thus, the court will defer to the defendants' interpretation of the statute. But more importantly, we agree with the defendants that the Secretary of State's reading of § 17–22A–2 is not only reasonable it is the only plausible one. With the introductory language in subsection (1), that a candidate is an individual who has done "any of the following," it is apparent that the further two subparts, subsections (a) and (b), are to be read independently. *See Tennessee Valley Authority v. Hill,* 437 U.S. 153, 185 n. 29, 98 S.Ct. 2279, 2297 n. 29, 57 L.Ed.2d 117 (1978) (when confronted with a statute that is plain and unambiguous on its face, it is ordinarily unnecessary to look beyond the statute); *United States v. Mayfield,* 999 F.2d 1497, 1500 (11th Cir.1993) ("[u]nless the statutory language is ambiguous or would lead to absurd results, the plain meaning of the statute must control").

Because the plaintiffs have not shown that the Secretary of State is administering its duties pursuant to a definition of "candidate" distinct from the definition prescribed by precleared statutes, the plaintiffs cannot prevail on their § 5 claim.

### III.

Having concluded that none of the above-discussed matters involves a change to procedures regarding voting subject to § 5, we will deny the plaintiffs' request for relief. An appropriate judgment will be entered.[18]

### *JUDGMENT*

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court that judgment is entered in favor of defendants Alabama Secretary of State Jim Bennett, Alabama Attorney General Bill Pryor, the Alabama Ethics Commission, and the named probate judges, and against plaintiffs Mark "Bo" Ritter, Lewis Colley, Barry Hughes, and C. Wayne Alexander on the claims brought under § 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C.A. § 1973c.

It is further ORDERED that the motions to dismiss filed by defendants on September 8, 11, and 18, 1998, are denied as moot.

It is further ORDERED that costs are taxed against plaintiffs Ritter, Colley, Hughes, and Alexander, for which execution may issue.

---

**18.** In a brief filed on September 22, 1998, the plaintiffs attempt to raise additional claims. These claims come too late.