**REFORM PARTY OF ALABAMA, an unincorporated association of electors of the State of Alabama, Robin Collins, Lorenzo French, Bob Friedman, Martin Goodwin, Claude Hamilton, Robert Hines, Ralph Johnson, Barrown Lankster, Henry McGhee, William Roberson, Plaintiffs,**

v.

**Jim BENNETT, in his official capacity as Secretary of State of the State of Alabama, Bill Pryor, in his official capacity as Attorney General of the State of Alabama, Leland Avery, in his official capacity as Judge of Probate of Hale County, Alabama, Michael F. Bolin, in his official capacity as Judge of Probate of Jefferson County, Alabama, Earlean Isaac, in her official capacity as Judge Probate of Greene County, Alabama, Alfonza Menefee, in his official capacity as Judge of Probate of Macon County, Alabama, Cindy D. Neilson, in her official capacity as Judge of Probate of Marengo County, Alabama, Willie Pearl Rice, in her official capacity as Judge of Probate of Sumter County, Alabama, John Will Waters, in his official capacity as Judge of Probate of Bullock County, Alabama, Defendants.**

No. Civ.A. 98–A–895–N.

United States District Court, M.D. Alabama, Northern Division.

Sept. 8, 1998.

**1344**

David A. Gespass, Kathleen M. Johnson, Gespass & Johnson, Birmingham, AL, John P. McClusky, Tuscaloosa, AL, for Reform Party of Alabama, Robin Collins, Lorenzo French, Bob Friedman, Martin Goodson, Claude Hamilton, Robert Hines, Ralph Johnson, Barrown Lankster, Henry McGhee, William Roberson.

John J. Park, Jr., Robert M. Weinberg, Office of the Atty. Gen., Montgomery, AL, for Jim Bennett, Bill Pryor.

Jeffery A. Foshee, Foshee & Associates, Montgomery, AL, Bart Gregory Harmon, Webb & Eley, P.C., Montgomery, AL, for Leland Avery, Alfonzo Menefee, Cindy D. Neilson.

Charles S. Wagner, Jefferson County Attorney's Office, Birmingham, AL, for Michael F. Bolin.

Jeffery A. Foshee, Foshee & Associates, Montgomery, AL, for Earlean Isaac, Willie Pearl Rice, John Will Waters.

R. Jack Drake, Cooper, Mitch, Crawford, Kuydendall & Whatley, Birmingham, AL, for State Democratic Executive Committee of Alabama, amicus.

Nathan G. Watkins, Jr., Livingston, AL, Ira D. Pruitt, Jr., Richard G. Cross, Pruitt, Pruitt & Watkins, PA, for Nathan G. Watkins, Sr., amicus.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

This suit was filed on August 14, 1998 by the Reform Party of Alabama and certain of its candidates for public office against Jim Bennett, as Secretary of State of the State of Alabama, Bill Pryor, as Attorney General, and certain Probate Judges. Plaintiffs seek a declaratory judgment and an injunction requiring that the individual named Plaintiffs be placed on the appropriate ballots as candidates of the Reform Party of Alabama in the November 1998 general election.

The Plaintiffs seek relief under the provisions of 42 U.S.C. § 1983, and the court finds that it has jurisdiction under 28 U.S.C. § 1331.

Following denial of Plaintiffs' Motion for a Temporary Restraining Order on August 21, 1998, the court, pursuant to Rule 65(a)(2), Fed.R.Civ.P., advanced trial of the action on the merits and consolidated it with the hearing on Plaintiffs' Application for Preliminary Injunction.

Upon consideration of the pleadings, stipulations and briefs filed by the parties, and testimony and evidence presented at trial on August 31, 1998, the court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

The Reform Party of Alabama ("RPA") is a small political party which was formed as a successor to the Patriot Party. Plaintiffs' Brief at p. 1.[1] The RPA has nominated several candidates for local and state offices for Alabama's November 1998 general election. *Id.* The issue in this case is whether the RPA's candidates are entitled to be on the ballot for this election.

---

1. All "Brief" citations are to the parties' Pre-Trial Briefs. "State's Brief" will refer to the joint Pre–Trial Brief of the Secretary of State and the Attorney General.

Title 17 of the Code of Alabama governs the procedures for political elections. Under Alabama's elections laws, there are two different methods for political parties to obtain access to the ballot. The first method is applicable to major "political parties," which are defined as follows:

An assemblage or organization of electors which, at the general election for state and county officers then next preceding the primary, casts more than 20 percent of the entire vote cast in any county is hereby declared to be a political party within the meaning of this chapter within such county; and an assemblage or organization of electors which, at the general election for state officers then next preceding the primary, casts more than 20 percent of the entire vote cast in the state is hereby declared to be a political party within the meaning of this chapter for such state.

Ala.Code (1975) § 17–16–2. Only these "20 percent" or "major" parties are governed by the provisions of Chapter 16, Title 17. If a political party can achieve this level of public support (at least 20 percent), it automatically obtains ballot access. Upon stipulation of the parties, it was established at trial that the RPA obtained this "20 percent" political party status in both Hale and Bullock counties for the November 1998 general election. *See* Tr. at pp. 112–13.[2]

Assemblages or organizations of electors which do not achieve the minimum 20 percent level of support ("minor parties") may also gain access to a general election ballot; however, they must do so pursuant to the second method, under Ala.Code (1975) § 17–8–2.1(a), which provides:

(a) No political party, except those qualified as a political party under Title 17, chapter 16, shall be included on any general election ballot unless:

(1) The party shall have filed with the Secretary of State or other appropriate official six days after the second primary election a list of the signatures of at least three percent of the qualified electors who casts [sic] ballots for the office of Governor in the last general election for the state,

county, city, district or other political subdivision in which the political party seeks to qualify candidates for office; and unless

(2) The party shall have fulfilled all other applicable requirements of federal, state or local laws.

Ala.Code (1975) § 17–8–2.1(a). Thus, these "minor" or "3 percent" parties must file a petition containing the signatures of at least 3 percent of the requisite eligible voters in order to obtain ballot access. Such petitions must be filed by "six days after the second primary election," July 6, 1998 in the present case. The RPA has apparently fulfilled its 3 percent petition obligations for the races at issue (other than in Hale and Bullock counties, where the 3 percent petition rule is inapplicable).

Candidates are placed on the ballot pursuant to Ala.Code (1975) § 17–7–1, which distinguishes between (1) candidates "put in nomination by primary election," (2) candidates "put in nomination by any caucus, convention, mass meeting, or other assembly of any political party or faction," and (3) independent candidates. The deadline for nomination is the same for all of these groups: six days after the second primary election.

Nomination via primaries for "major" or "20 percent" parties is governed by Ala.Code (1975) § 17–16–5, which provides:

Primary elections are not compulsory. A political party may, by its state executive committee, elect whether it will come under the primary election law. All parties are presumed to have accepted and come under the provisions of the primary election law, but any political party may signify its election not to accept and come under the primary election law by filing with the Secretary of State, at least 60 days before the date herein fixed for the holding of any general primary election, a statement of the action of its state executive committee, certified by its chairman and secretary, which statement shall contain a copy of the resolution or motion adopted declining to accept and come under the primary election law.

**2.** All citations to the record transcript of the August 31, 1998 trial will be cited as: "Tr. at p.

——" to refer to the appropriate page of the transcript.

Ala.Code (1975) § 17–16–5. Thus, unless these "major" or "20 percent" parties opt out of the provisions of the primary election law by filing a statement of their intentions to not hold a primary with the Secretary of State at least 60 days prior to the date fixed for primaries, they are required to choose their nominees by a primary election.

On the basis of Plaintiffs' stipulations at trial, this court finds that the RPA achieved "major" or "20 percent" party status in both Hale and Bullock counties for purposes of the November 1998 general election. *See* Tr. at pp. 112–13, 124. It is also undisputed that the RPA neither filed a written statement opting out of the primary election law with the Secretary of State nor held a primary election to select its Hale and Bullock county candidates. Tr. at p. 100, 124–25.

The Plaintiffs did not contend that they were misled by the Secretary of State's Office or anyone else about the primary law. Tr. at p. 124. This court finds that none of the Defendants made any representations, accurate or otherwise, regarding the primary process for "major" political parties.

The RPA's main point of contention, however, is the deadline for the filing of candidate nominations for "minor" or "3 percent" parties. This date is set by Ala.Code (1975) § 17–7–1(a)(2) as no later than 5:00 p.m. six days after the second primary election (July 6, 1998 for the November 1998 general election). This statute provides:

(a) The following persons shall be entitled to have their names printed on the appropriate ballot for the general election, provided they are otherwise qualified for the office they seek:

    ·    ·    ·    ·    ·

(2) All candidates who have been put in nomination by any caucus, convention, mass meeting, or other assembly of any political party or faction and certified in writing by the chair and secretary of the nominating caucus, convention, mass meet-ing, or other assembly and filed with the probate judge, in the case of a candidate for county office, and the Secretary of State in all other cases, on or before 5:00 P.M. six days after the second primary election.

Ala.Code (1975) § 17–7–1(a)(2).[3]

The following chronology details the events which preceded the Plaintiffs' filing of their Complaint with this court. The court finds the following facts established as true.

In January of 1998, the Alabama Secretary of State's Office published its 1998 Filing Calendar. This calendar listed April 3, 1998 as the "[l]ast day a candidate may qualify with a political party to run for office." *See* Plaintiffs' Ex. A. The calendar specified June 30, 1998 as the date for "Primary Run–Off" (second primary) elections and July 6, 1998 as the "[l]ast day for independent and third party candidates to file petitions for ballot access" for the November 1998 general election. *Id.*

The *Alabama Election Handbook*, Eighth Edition, published jointly by the Office of the Secretary of State and the Alabama Law Institute, included a 1998 Election Administrative Calendar. *See* Probate Judges' Ex. 5 at pp. 21–23, 31. On this calendar, July 6 was listed as the "[l]ast day for candidates placed in nomination by any caucus, convention, mass meeting or other assembly of any political party or faction to be certified to the probate judge for county office and to the secretary of state for other offices (17–7–1)." *Id.* at p. 31. Bob Friedman, Vice Chair of the RPA, testified at trial that he had consulted this book between February and July of 1998. Tr. at p. 87.

On February 12, 1998, Friedman faxed a letter to Chuck Grainger, General Counsel for the Secretary of State. Plaintiffs' Ex. B. In this letter, Friedman requested that the Secretary of State obtain an Attorney General opinion as to the proper deadline for third party candidates to submit the names of

---

**3.** The statute's previous requirement that minor parties certify their ballot access petitions and nominees 60 days before the first primary was held unconstitutional in *New Alliance Party v. Hand*, 933 F.2d 1568, 1570 (11th Cir.1991). For a few years following *Hand*, the Secretary of State's Office administratively extended the deadline for minor parties to file the names of their nominees. Then, in 1995, the Legislature amended § 17–7–1, statutorily setting the deadline as 5:00 p.m. six days after the second primary.

their nominees to the Secretary of State for the November 1998 general election. *Id.* At trial, Grainger testified that an Attorney General's opinion regarding this deadline had not been requested by the Secretary of State's Office because other obligations, including opinions regarding other inquiries by Friedman, were pending at the time. Tr. at p. 72. Grainger testified that the request had been taken under advisement and that the Secretary of State's Office had planned to ask for an Attorney General opinion on this issue later in the spring, but by that time, Grainger had forgotten the request. Tr. at p. 72. Grainger never requested an Attorney General's opinion.

On February 16, 1998, Friedman sent a second fax to Grainger. *See* Plaintiffs' Ex. C. The cover sheet of the fax included a comment which noted that, in reference to *New Alliance Party v. Hand,* "the conclusion resulted in Aug. 31st being the date we had to announce. Since July is now that deadline, that's the deadline we are asking for." *Id.* This establishes that the Plaintiffs were aware that the date for nominees was in July and that the RPA intended to comply with the July deadline.

On February 25, 1998, Grainger responded to Friedman's faxes. *See* Plaintiffs' Ex. D. In his letter, Grainger agreed that the April 3, 1998 date was inapplicable to minor parties as a result of *New Alliance Party v. Hand,* 933 F.2d 1568 (11th Cir.1991). *Id.* Grainger further stated that, "[a]s a result of that federal court's decision and the absence ·of specific statutory guidance, the deadline will have to be administratively. set by this office." *Id.* Grainger testified at trial that as of February 25, 1998, he was unaware of the provisions of Ala.Code (1975) § 17–7–1(a)(2), which had been passed by the Legislature in 1995 after, and in response to, the decision in *New Alliance Party v. Hand.* Tr. at p. 11.

The court finds that Ala.Code (1975) § 17–7–1(a)(2) does give "specific statutory guidance," setting 5:00 p.m. six days after the second primary as the deadline for minor parties to submit the names of their nominees. The court finds that Grainger communicated incorrect information regarding the deadline to the RPA.

On March 15, 1998, Friedman, acting on behalf of the RPA, sent a letter to Grainger at the Secretary of State's Office. *See* State's Ex. 7. This letter references an oral agreement between Friedman and Grainger reached during a March 13, 1998 conversation. *Id.* The letter provides, in relevant part, "we agreed that the deadline for submitting third party nomination papers to the Secretary of State (state races) or County Probate (local races) would be 35 days after the second primary (this year, 8/4/98). If this is correct, please inform us of this administrative change in writing." *Id.*

At trial, Grainger testified that the Secretary of State declined to put this "informal deadline" in writing because doing so would trigger the requirements of the Alabama Administrative Procedures Act regarding informal rules[4] and because the administrative deadline change would require pre-clearance by the Department of Justice under § 5 of the Voting Rights Act, 42 U.S.C. § 1973c.[5] Tr. at p. 17. The Secretary of State's Office never complied with the Alabama Administrative Procedures Act or the Voting Rights Act in setting its "administrative deadline." Grainger testified that this was explained to Friedman by telephone sometime between March 15 and April 15, 1998; however, Grainger has no contemporaneous documentation verifying that such an explanation was ever proffered. Tr. at pp. 17–18. Friedman testified at trial that he was never informed of these potential problems, nor given an

---

**4.** *See* Ala.Code (1975) §§ 41–22–3(1) (defining an "agency" of the State of Alabama to include the Secretary of State's Office) and 41–22–3(9) (defining a "rule" to include the Secretary of State's deadline extension in this case).

**5.** 28 C.F.R. § 51.10 requires "[a]ny change affecting the eligibility of persons to become or remain candidates, to obtain a position on the ballot in primary or general elections ..." to be

pre-cleared with the Department of Justice or approved by the U.S. District Court for the District of Columbia. *See* 28 C.F.R. §§ 51.10 and 51.13(g). In 1992 and 1994, before the Legislature amended § 17–7–1 to statutorily set the deadline for filing nominees, the Alabama Secretary of State's Office set administrative deadlines which were somehow "retroactively pre-cleared" by the Department of Justice. Tr. at 22–24.

explanation for the Secretary of State's refusal to give a written verification of its administrative change. Tr. at pp. 81–82.

The State of Alabama, however, produced evidence at trial which indicated that Friedman was aware of the implications of the Voting Rights Act on Alabama's election laws. In a February 13, 1996 letter to the editor of the *Montgomery Advertiser* regarding House Bill 66, Friedman stated, "[s]ince Alabama is a voting-rights state, the Justice Department had to clear any changes in election law." State's Ex. 16. This court therefore finds that Friedman had notice that any elections law deadline change set by the Secretary of State's Office would implicate the Voting Rights Act and require clearance by the Department of Justice.

The Secretary of State's Office published its incorrect "administrative" deadline (August 5, 1998) in two places before the July 6, 1998 statutory deadline. On approximately June 29, 1998, the Secretary of State's Minor Party/Third Party guidance sheet was modified to reflect a change from the original July 6, 1998 deadline for minor party ballot access petitions and candidate nominations to the "administrative" deadline of August 5, 1998. State's Brief at p. 3; State's Exs. 11 and 11A. Friedman testified that he did not think that he had ever seen a document marked "Minor Party/Third Party." Tr. at p. 90. This court therefore finds, as a matter of fact, that Friedman could not have relied on this "Minor Party/Third Party" memorandum in deciding not to file the names of the RPA's nominees in accordance with the July 6 statutory deadline.

On approximately June 30, 1998, the Alabama Secretary of State's website was modified to include August 5, 1998 as the deadline for parties that did not receive 20 percent of the vote cast in the last general election ("Third Parties") to file their certificates of nomination. Plaintiffs' Ex. E. At trial, Friedman testified that he did not see the August 5, 1998 date posted on the Secretary of State's website until after the statutory deadline had passed. Tr. at p. 90. This court therefore finds that Friedman could not have relied on the incorrect information posted on the Secretary of State's web page in deciding not to file the names of the RPA's nominees in accordance with the July 6 statutory deadline.

Sometime before July 6, 1998, the Office of the Secretary of State discussed an extension of the July 6 filing deadline to August 5 with two other minor parties, the Libertarian and Taxpayers parties. *See* Joint Stipulations at p. 4. Notwithstanding those discussions, the Libertarian Party and the Taxpayers Party filed their certificates of nominations in the appropriate offices before the July 6, 1998 statutory deadline. *Id.*

The RPA held three separate nominating meetings and made three subsequent submissions of its nominees' names between July 6 (the statutory deadline) and August 5, 1998 (the putative "informal, administrative" deadline). On July 12, the RPA held a nominating meeting at which all individual named Plaintiffs except Hines, Goodwin and Friedman were nominated. Joint Stipulations at Att. 2 "Chronology." The following week, the names of the RPA's county nominees were submitted to the appropriate county Probate Judges. *Id.* On July 26, the RPA held its second nominating meeting at which Friedman was nominated. *Id.* On July 27, Friedman and Lankster submitted their nominations to the Secretary of State. Finally, on August 2, the RPA held its third nominating meeting at which the remaining individual Plaintiffs, Hines and Goodson, were nominated. *Id.* On August 3, Hines and Goodson submitted their nominations to the Secretary of State. *Id.*

In the meantime, on July 13, 1998, after the July 6 statutory deadline had passed, the Elections Division of the Secretary of State's Office sent Bob Friedman a written memorandum explaining the rationale behind the putative August 5 "administrative deadline." *See* Plaintiffs' Ex. F. This memorandum was the first written acknowledgment of the administrative deadline Friedman received. Tr. at 90. This court finds, as a matter of fact, that Friedman could not have relied on the Secretary of State's July 13 memorandum in deciding to not to file the names of the RPA's nominees in accordance with the July 6 statutory deadline.

At the same time, other state officials began to question the validity of the Secretary of State's August 5 "administrative deadline." On July 16, 1998, State Representative Demetrius C. Newton sent a letter to Secretary of State Bennett. *See* Plaintiffs' Ex. G. Newton's letter questioned the Secretary of State's authority to waive the provisions of Ala.Code (1975) § 17–7–1 and challenged the RPA's access to the ballot for the November election. *Id.*

Sometime between July 15 and July 20, Judge Earlean Isaac, Judge of Probate for Greene County, requested an Attorney General's Opinion for guidance as to whether the RPA's nominees, whose names were submitted to her after the July 6 statutory deadline, should be included on the ballot for the November general election. Joint Stipulations at Att. 1, "Chronology." Grainger testified that the Secretary of State's Office did not inform the Probate Judges of the "administrative extension" of the July 6 filing deadline before July 6, 1998. Tr. at p. 43. The court finds, as a matter of fact, that Judge Isaac's request for an Attorney General's opinion regarding the correct deadline was more than reasonable, given the conflicts between the clear statutory deadline and the "administrative" deadline purportedly enacted by the Secretary of State's Office.

Judge Isaac's request for guidance from the Attorney General was followed by two confusing press releases from the Secretary of State's Office which contradict Ala.Code (1975) § 17–7–1 regarding filing deadlines and the Secretary of State's responsibilities regarding the certification of nominees for the November 1998 general election ballot. On July 21, 1998, the Secretary of State's Office issued a press release which provided, in relevant part:

> The informal deadline of August 5 was set by the Secretary of State for receiving nominations and [sic] has been done in past years but does not control whether the candidate will actually be placed on the ballot by the probate judge.... The Secretary of State's decision is inclusive and fair to both the major and minor political parties and is in compliance with the limited reporting role he has in the process.

It is the probate judge's responsibility to evaluate whether the individual candidates are qualified to be on the ballot pursuant to the decision of the Alabama Supreme Court in *Kinney v. House*, 10 So.2d 167 (Ala.1942) and the language of the state election statutes. The Secretary of State reports the nominees; the probate judge decides which candidates have qualified to be on the ballot.

Probate Judges' Ex. 2.

This first press release apparently reflects the Secretary of State's position (prior to this litigation) on disputed ballot access matters. As explained by Grainger at trial, Secretary Bennett had instructed his staff:

> that if there is any ambiguity to err on the side of openness and to leave it to the courts and the political parties to resolve the ambiguity rather than to place our office in the middle of it as a referee. And we later learned by virtue of the attorney general's opinion on August the 12th that we did have a responsibility in that area. But we didn't know that at the time we were looking at these issues in the spring.

Tr. at p. 71. The problem in the present case is that the Secretary of State's Office accepted the RPA's claim that the law regarding minor party filing deadlines was "ambiguous" without examining (or even finding) the applicable statute. Instead, the Secretary of State's Office, by purporting to administratively set a deadline which was contrary to clear statutory guidance, created an ambiguity which it has left for this court to resolve.

A second press release was issued by the Secretary of State's Office on July 23, 1998. It followed an Attorney General's opinion interpreting the Secretary of State's role in certifying candidates to the state's probate judges. *See* Probate Judges' Ex. 3. The Secretary of State's Office stated a "concern that different probate judges might take separate positions on the qualifications of candidates for state office resulting in inconsistent ballots across the state." *Id.* According to this second press release, the Secretary of State's Office intended to exclude disqualified candidates from the report of state nominations for the general election and include a

list of disqualified candidates and the reasons for their disqualifications to the probate judges. Id. Finally, the press release noted that the Secretary of State's Office would apply any guidance received from the Office of the Attorney General as a result of Judge Isaac's request for clarification regarding the legal deadlines for candidate nominations. Id.

As the fallout from the Secretary of State's "administrative deadline" decision became more problematic, Grainger held a meeting with Friedman and several of the RPA's other nominees on July 27, 1998. Id. Following the meeting, Grainger sent a letter to Friedman refusing to provide a requested statement that the RPA's candidates would be certified as candidates by the Secretary of State's Office for the November general election. See Plaintiffs' Ex. I. The letter refers to two pending Attorney General opinions, the first regarding Judge Isaac's request for an interpretation of Ala.Code (1975) § 17–7–1(a)(2), and the second regarding the Secretary of State's request for an explanation of its role in determining whether nominees submitted to its office are properly qualified and due to be certified to the appropriate county probate judges, as the reason for the refusal to verify the certification of the RPA's candidates. Id. It appears that the Secretary of State, Alabama's chief elections officer, was attempting, after the fact, to get guidance to clarify the extent of his authority and responsibilities regarding minor party ballot access for general elections.

On July 29, 1998, the Attorney General issued his opinion in response to Judge Isaac's request. See Probate Judges' Ex. 6. The Attorney General found that statutes "setting the time for filing a certificate of nomination are universally held to be mandatory and not directory. [citations omitted]. Alabama has generally held that election laws are mandatory. [citations omitted] ." Id. at p. 4. The Attorney General further noted that "no administrative rulings made by the Secretary of State's Office concerning an extension of filing deadlines for the 1998 general election have been precleared by the United States Justice Department." Id. The

opinion finally concluded that, "[u]nless otherwise directed by a court of law, a probate judge should not print the names of parties or candidates whose nominations were filed after the statutory deadline on the general election ballot." Id. at p. 5.

On August 12, Judge Isaac sent a letter to the RPA in order to "verify that based on an opinion of the Attorney General's Office, the names of all candidates who have been put in nomination by the Reform Party of Alabama will not be printed on the ballot for the November 1998 general election, unless otherwise directed by a court of law." Probate Judges' Ex. 9. Two days later, on August 14, 1998, the Plaintiffs filed their Complaint and this litigation followed.

### CONCLUSIONS OF LAW

The Plaintiffs' claims are based on 42 U.S.C. § 1983, which affords relief to individuals who have been deprived of a constitutional right by an individual who was acting under color of state law. Lowe v. Aldridge, 958 F.2d 1565, 1569 (11th Cir.1992) (citing Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 156–57, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)). The Plaintiffs allege that, under color of state law, they were denied rights granted to them under the First Amendment to the United States Constitution, as incorporated against the states by the Fourteenth Amendment. The issue is whether the Plaintiffs' constitutional rights have been denied by any of the Defendants.

The Plaintiffs assert three separate claims.[6] The Plaintiffs' first cause of action alleges that the Plaintiffs detrimentally relied upon the Secretary of State's representations as to the appropriate deadline for filing the names of nominees. Plaintiffs assert that if the Defendants are not required to place the names of the Plaintiffs on the ballot, the Plaintiffs will be deprived of their constitutional rights to ballot access by virtue of this reliance. The second cause of action alleges that the Opinion of the Attorney General, to the extent that it defines the election laws contained in the Code of Alabama, unconstitutionally deprives "minor" parties of their

---

**6.** The Plaintiffs voluntarily dismissed their fourth cause of action at trial. Tr. at p. 113.

right to ballot access in that it requires those parties to name their candidates before they are legally constituted as political parties under the Code.

Finally, the Plaintiffs' third cause of action alleges that the Attorney General's Opinion erroneously interprets the Alabama Code to require that to be afforded ballot access, all candidates be named by "minor" parties concurrently with their submission of petitions. Plaintiffs further contend that the Alabama Code is silent as to when such candidates should be named, and therefore, that it is appropriate that a final deadline be established administratively by the Secretary of State.

In the face of these contentions, the position of the Secretary of State and the Attorney General[7] is that Ala.Code (1975) § 17–7–1(a)(2) provides a clear, statutory deadline of 5:00 p.m. six days after the second primary election (July 6, 1998) for minor parties to file the names of their nominees. Tr. at pp. 126–27. The Secretary of State and the Attorney General claim that the statute cannot be changed administratively without compliance with the Alabama Administrative Procedures Act and the Voting Rights Act. Tr. at p. 128. Thus, any representations made by the Secretary of State's Office regarding an administrative extension of the July 6 deadline were incorrect and have no legal effect. These Defendants assert and have shown that the Plaintiffs had nothing in writing from the Secretary of State's Office regarding the putative administrative deadline extension upon which to rely before the statutory deadline passed. Tr. At pp. 127–28. These Defendants further assert that the proper allocation of responsibility for determining and meeting election statute deadlines is with the parties and their candidates, not with the Secretary of State. Tr. at 130. Thus, any reliance placed on the Secretary of State's oral agreement to extend the filing deadline was unreasonable and contrary to the provisions of Ala.Code (1975) § 17–7–1(a)(2).

The Probate Judges agree with the Secretary of State and the Attorney General that Ala.Code (1975) §§ 17–7–1 and 17–8–2.1 are abundantly clear. Tr. at pp. 132–33. The Probate Judges, however, do not take a position on whether the Plaintiffs' reliance on the Secretary of State's administrative deadline advice was justifiable. Tr. at pp. 133–34 ("We don't think we have a dog in that fight."). The Probate Judges argue that they are not necessary parties to this litigation, except possibly Judge Isaac (as a necessary party for relief). Tr. at 134. The Probate Judges contend, and this court agrees, that there is nothing to indicate that the probate judges have been a moving force behind any constitutional violation. Tr. at p. 134.

The evidence shows that the RPA relied in good faith upon the oral representation of the General Counsel of the Secretary of State that the deadline for filing their nominations had been administratively extended from July 6, 1998 to August 5, 1998. The evidence also shows that, absent the Secretary of State's representations, the RPA would have filed the names of its nominees before the July deadline. Thus, the issue to be determined is whether the giving of this erroneous advice by the Secretary of State denied the Plaintiffs a constitutional right.

█ As an initial matter, this court addresses the Plaintiffs' contentions that the denial of ballot access in the Hale and Bullock County sheriffs races denied them constitutional rights. The court finds, on the basis of the undisputed facts,[8] that the Plaintiffs' claims of detrimental reliance in regard to the sheriffs races in Hale and Bullock counties are completely without merit. Any denial of ballot access in these two counties is a direct result of the Plaintiffs' failure to ascertain the RPA's status as a "major" political party and/or failure to comply with the statu-

---

7. The Secretary of State and the Attorney General filed a joint brief.

8. As previously set out, this court found, and the Plaintiffs acknowledged, that the RPA had "major" party status in Hale and Bullock counties and that they had not held a primary or opted out of the primary process in accordance with Ala.Code (1975) § 17–6–5. The Plaintiffs also agreed that the Secretary of State's Office had not made any misrepresentations to them regarding the primary elections law.

tory mandates for ballot access for "major" political parties. Thus, the Plaintiffs have no claim that any of their constitutional rights were violated by any of the Defendants in either the Hale or Bullock county sheriffs races.

### Plaintiffs' First Cause of Action

■ This cause of action sets out the Plaintiffs' detrimental reliance argument. As the court acknowledged at trial, given the Secretary of State Office's incorrect statements to the RPA, this claim has some appeal from the perspective of fairness. *See* Tr. at p. 127. Unfortunately for the Plaintiffs, the claim has no appeal from the perspective of the law.

The Secretary of State's purported administrative extension of the filing deadline was legally invalid for three reasons. First, the Secretary of State's Office did not comply with the terms of the Alabama Administrative Procedures Act in promulgating its informal, administrative deadline extension. Second, the Secretary of State's Office did not comply with the requirements of the Voting Rights Act to obtain pre-clearance by the Department of Justice or approval by the U.S. District Court for the District of Columbia. Finally, even if the first two hurdles had been cleared, state administrative officials, such as the Secretary of State, do not have legal authority to promulgate rules which contradict statutes enacted by the Alabama Legislature. *See Hand v. State Dep't of Human Resources*, 548 So.2d 176, 178 (Ala.1988) (citing N. Singer, 1A Sutherland Stat. Const. § 31.02 (Sands 4th ed.1985) for the proposition that the "provisions of the statute will prevail in any case of conflict between a statute and an agency regulation.").

■ Detrimental reliance is a necessary element of the doctrine of equitable estoppel. *See Liberty Mutual Fire Ins. Co. v. Parish*, 630 So.2d 437 (Ala.1993). The Plaintiffs argue that because the Plaintiffs relied on the Secretary of State's misrepresentations as to the filing deadline to their detriment, the State of Alabama should be equitably estopped from enforcing the statutory deadline

against the Plaintiffs. The elements of equitable estoppel are:

(1) The person against whom estoppel is asserted, who usually must have knowledge of the facts, communicates something in a misleading way, either by words, conduct, or silence, with the intention that the communication will be acted on;

(2) The person seeking to assert estoppel, who lacks knowledge of the facts, relies upon the communication; and

(3) The person relying would be harmed materially if the actor is later permitted to assert a claim inconsistent with his earlier conduct.

*See Lambert v. Mail Handlers Benefit Plan*, 682 So.2d 61 (Ala.1996).

The Plaintiffs have difficulty establishing the second element, that they lacked knowledge of the actual filing deadline. Even if the Plaintiffs lacked actual, concrete knowledge of the statutory deadline, it was not reasonable for the Plaintiffs to rely on an oral representation as to the filing deadline from the Secretary of State's Office which directly contradicted a clear, published statutory deadline enacted by the Alabama Legislature. *Cf. City of Birmingham v. Cochrane Roofing & Metal Company, Inc.*, 547 So.2d 1159, 1167 (Ala.1989) (limiting the doctrine of equitable estoppel by requiring a standard of reasonable reliance in the statute of frauds context).

The Plaintiffs' claim is analogous to a claim of misrepresentation. Under Alabama law, a consumer cannot reasonably rely on an oral misrepresentation which contradicts a written contract term. *See Foremost Ins. Co. v. Parham*, 693 So.2d 409 (Ala.1997). In the present case, the Plaintiffs unreasonably relied on an oral misrepresentation which contradicted a written, statutory deadline. The Plaintiffs relied on Grainger's oral representations of what the new, "administrative" deadline would be, despite unanswered requests for an Attorney General's Opinion regarding the proper deadline and for a written confirmation of the Secretary of State's new "administrative" deadline. While there is a factual dispute as to whether Friedman was notified by the Secretary of State's Office as to the problems with its "administra-

tive deadline" requiring compliance with Alabama Administrative Procedures Act and pre-clearance from the Department of Justice,[9] Friedman's request for a written verification of the new date shows, at the very least, uncertainty on his part as to whether the oral provision of the August 5 date would be enforceable.

This is especially true in the face of evidence that the Plaintiffs likely had knowledge of the correct date. Friedman acknowledged that, in April of 1997, he believed the deadline for candidate nominations was sometime during the first week of July, 1998. *See* State's Ex. 18; Tr. at p. 106. Even if the Plaintiffs did not have actual knowledge that July 6 was the statutorily mandated filing deadline, the deadline date and the statute which established the deadline were published and available to the Plaintiffs. The Defendants produced evidence that the correct, statutory deadline (July 6) was published in sources which Friedman and the RPA had consulted between February and July of 1998.

If the Plaintiffs were as confused about the deadline as they (and the Secretary of State) appear to have been, they should have sought legal advice. The Plaintiffs also had the option of asking a court to interpret the statute in a declaratory judgment action. The Plaintiffs, however, took none of these precautionary actions and instead relied solely on oral representations from a state agency without authority to alter the statutory deadline.

The Plaintiffs have cited this court to two non-binding decisions from other jurisdictions in support of their claim. These cases are, however, distinguishable. In the first, a federal district court ordered ballot access because the candidates were Native Americans whom the court perceived to be in need of protection because of historical discrimination. *Yanito v. Barber*, 348 F.Supp. 587 (D.Utah 1972). In the second, a presidential candidate relied on written advice from both the Secretary of State and the State Attorney General regarding a filing deadline. *McCarthy v. Hardy*, 420 F.Supp. 410

(E.D.La.1976). These cases are inapplicable to the Plaintiffs' claims in the present case.

The Plaintiffs have also cited this court to two Alabama state court decisions in which the courts have applied equitable estoppel against the state. *See Ex parte Four Seasons, Ltd.*, 450 So.2d 110 (Ala.1984); *American Real Estate Institute v. Alabama Real Estate Appraisers Bd.*, 689 So.2d 199 (Ala. Civ.App.1997). Both of these cases involved a misrepresentation by a representative of a state agency; however, the information provided in both cases was purely ministerial and not contrary to a state statute. For this reason, neither case is applicable to the Plaintiffs' claims.

■ One court in this district has noted that "under Alabama law, even where state officials may attempt to bring election information to the attention of all citizens through local channels, each candidate for office still bears the sole responsibility for the timely filing of all necessary forms." *Dillard v. Town of North Johns*, 717 F.Supp. 1471, 1476 (M.D.Ala.1989). This court finds that, even where state officials negligently give erroneous information to representatives of political parties, each candidate for office still bears the sole responsibility for the timely filing of all necessary forms which are statutorily required.

There is another fairness consideration, which weighs against the Plaintiffs, to take into account. To allow the RPA's candidates access to the ballot without compliance with Alabama's election laws would interfere prejudicially with the rights of others. Other parties, both major and minor, complied with the terms of Alabama's election laws to obtain ballot access. To allow the RPA's candidates access to the ballot would adversely affect the candidates of these other parties who obtained ballot access in accordance with the terms of the law. In addition, there may well be others who might have wished to gain access as minor party candidates but who, for one reason or another, in reliance on the statutory language, did not attempt to do so. To allow the RPA's candidates access to the

9. The State produced evidence at trial which established that Friedman was aware of the implications of the Voting Rights Act on Alabama election law.

ballot now would be unfair to this class of potential candidates.

In this case, where the law is clear, the Plaintiffs, like all other political parties and their candidates, are charged with knowledge of the law and are required to comply with its terms. While the Secretary of State's Office gave erroneous advice to the Plaintiffs, the Plaintiffs' reliance on this advice was not reasonable. Since the Secretary of State's advice had no legal effect and the Plaintiffs' reliance on this advice was unreasonable, the Plaintiffs have no legal recourse. The Plaintiffs' good faith reliance on the Secretary of State's misinformation from the Secretary of State's Office is insufficient to create legal liability or to allow ballot access. The Secretary of State's negligent provision of incorrect advice simply does not rise to the level of a constitutional deprivation. This court therefore holds that judgment is due to be granted for Defendants as to the Plaintiffs' first cause of action.

### Plaintiffs' Second Cause of Action

■ Plaintiffs' second cause of action alleges that the Opinion of the Attorney General, to the extent that it defines the election laws contained in the Code of Alabama, unconstitutionally deprives "minor" parties of their right to ballot access in that it requires those parties to name their candidates before they are legally constituted as political parties under the Code. There are two problems with these contentions. First, the Plaintiffs are confused as to the legal effect of an opinion of the Attorney General. Attorney General's opinions are merely advisory in nature and do not have the effect of law. *See Farmer v. Hypo Holdings, Inc.,* 675 So.2d 387, 390 (Ala.1996). Thus, the Plaintiffs' contentions that an Attorney General's opinion in any way "defined the election laws contained in the Code of Alabama" or was binding on any state official are completely erroneous.

The second problem with this claim is the Plaintiffs' contention that the Attorney General's opinion requires minor parties to name their candidates before they are legally constituted as political parties under Alabama law. This Attorney General's opinion does no such thing. Rather, the opinion simply quotes the relevant Alabama statutes (Ala. Code (1975) §§ 17–7–1(a)(2) and 17–8–2.1) and notes that, pursuant to these statutes, the deadlines for a political party to file both a petition for ballot access and the names of its nominees were the same, July 6, 1998, for the November 1998 general election. *See* Probate Judges' Ex. 6.

Neither the Attorney General's opinion nor any Alabama election statute requires minor parties to name their candidates before they are legally constituted as political parties. Rather, the statutory scheme simply sets the deadlines for filing paperwork relevant to both ballot access and nominees' names on the same day. Nothing in the Alabama Code requires minor parties to be "legally constituted as political parties" before the submission of their nominees.

■ Finally the Plaintiffs appear to allege in their Complaint that the simultaneous filing deadlines place an undue burden on minor parties. However, in *New Alliance Party v. Hand,* the Eleventh Circuit noted, in reference to an April 3 filing deadline under § 17–7–1's previous version that, although "the simultaneous deadlines may pose a burden on a minor party in some instances, the evidence submitted in this case does not establish that the concurrent deadlines posed any extra burden . . . beyond the meeting of both by an early date." 933 F.2d at 1575. The Plaintiffs have produced no evidence of any "undue burden" placed on the RPA or any other minor party because of the simultaneous filing dates of July 6.

This court finds that the Plaintiffs' second cause of action is without merit. The Attorney General has done nothing by writing an advisory opinion to deprive anyone of a constitutional right. Nor has any party who acted in accordance with this opinion deprived anyone of a constitutional right. This court, therefore, holds that judgment is due to be granted for Defendants as to the Plaintiffs' second cause of action.

### Plaintiffs' Third Cause of Action

■ Plaintiffs' third cause of action alleges that the Attorney General's Opinion erroneously interprets the Alabama Code to require that to be afforded ballot access, all candi-

dates be named by "minor" parties concurrently with their submission of petitions. Plaintiffs further contend that the Alabama Code is silent as to when such candidates should be named, and therefore, that it is appropriate that a final deadline be established administratively by the Secretary of State.

As noted above, the Attorney General's Opinion does not definitively interpret the Alabama Code. Nor does the Alabama Code (or the Attorney General's guidance to its interpretation) require all "minor" party candidates to be named concurrently with the "minor" party's submission of petitions. Instead, the relevant Alabama statutes simply set the deadline for the submission of both things at the same time. *See* Ala.Code (1975) §§ 17–7–1(a)(c) and 17–8–2.1. The Attorney General's Opinion accurately states the statutory requirements and is in no way "erroneous."

Finally, as all of the parties and this court have acknowledged, the Alabama Code is emphatically not silent as to when minor party candidates should be named.[10] The Alabama Code provides that the deadline for filing the names of candidates is six days after the second primary, July 6, 1998 for this year's November general election. *See* Ala.Code (1975) § 17–7–1(a)(2). This statutory deadline is mandatory and allows no room for an administrative establishment of any other deadline. The Secretary of State simply cannot "administratively" amend or revoke a statute enacted by the Legislature. This court does not pretend to understand why or how the Alabama Secretary of State's Elections Division failed to discover or understand paragraph (a)(2) of Ala.Code (1975) § 17–7–1. That fact, however, does nothing to change the applicability of the clear, statutory deadline.

As noted above, the Attorney General has done nothing by writing his legally correct advisory opinion to deprive anyone of a constitutional right. Nor has any party who

acted in accordance with this opinion deprived anyone of a constitutional right. This court, therefore, holds that judgment is due to be granted for Defendants as to the Plaintiffs' third cause of action.

### CONCLUSION

Alabama law is clear and unambiguous that the deadline for minor parties to gain ballot access for the general election by filing a list of signatures of at least 3% of applicable qualified electors is six days after the second primary election (Ala.Code, § 17–8–2.1), which for 1998 was July 6.

Alabama law is equally clear and unambiguous that the deadline for minor parties to file their list of nominees for placement on the general election ballot is also six days after the second primary election, on or before 5:00 p.m. (Ala.Code, § 17–7–1(a)(2)), which for 1998 was July 6.

Nothing in the law requires a party to wait until the last day to either file its list of signatures or certify its nominees, or to do both on the same day. If it chooses to do so, however, it is placed under no undue burden.

The Alabama Legislature has provided clear and fair means for minor parties to nominate candidates and have their names on the ballot for the general election. All they must do is follow the law.

In 1998, the General Counsel of the Office of Secretary of State, apparently unaware of these clear statutory provisions, agreed with the spokesman of the Reform Party of Alabama that the law was ambiguous and attempted to administratively extend the deadline for certifying candidates. Not only did this violate mandatory requirements established by the Legislature, but also violated requirements of the state Administrative Procedures Act and the federal Voting Rights Act. The Reform Party of Alabama complied with this "administrative deadline", but not with the law.

---

10. At trial, the Plaintiffs backed away from this contention that the statutory scheme "does not explicitly set a date by which three percent party candidates have to submit their nominating positions...." Plaintiffs' Brief at pp. 2–3. Rather, the Plaintiffs argued that the language of Ala.

Code (1975) § 17–7–1 is ambiguous because it provides that "the following persons shall be entitled to have their names printed on the appropriate ballot," not "*only* the following persons ...." *See* Tr. at p. 116.

Even though the Reform Party of Alabama, through its Vice Chair, Bob Friedman, and its candidates, through Mr. Friedman, may have relied on erroneous advice from the Secretary of State's Office and thereby failed to meet the legal deadlines, this does not allow them to be on the 1998 general election ballot. The advice violated clear law, and candidates for office have a responsibility to ascertain what the law is and follow it. Furthermore, reliance in this case was not reasonable. Even though the court feels that Mr. Friedman thought that he could rely on the advice he got, his reliance was not legally reasonable so as to estop the State of Alabama from enforcing its laws. He first asked the Secretary of State's General Counsel to request an Attorney General's opinion, which he never got. He asked for written confirmation of the new deadline, which he never saw before. the deadline passed. He had knowledge that the federal Voting Rights Act would require preclearance, which was not being sought. In short, while he may have relied on erroneous advice from the Secretary of State's Office, he had no legal right to do so. And, allowing the Reform Party of Alabama to disregard clear legal deadlines, even under the facts of this case, would violate the rights of other parties which followed the law, and the rights of its candidates.

For all of these reasons, the court finds that the Plaintiffs' Request for Preliminary Injunction is due to be DENIED and Judgment rendered in favor of the Defendants on the merits.

The Attorney General and the Probate Judges have all filed Motions to Dismiss. Since Judgment will be rendered in favor of all Defendants on the merits, these Motions will be denied at moot.

Even though Judgment will be rendered in favor of all Defendants, the court finds it appropriate under the facts of this case discussed above that costs be taxed against the Secretary of State.